WYATT RODGERS v. THE STATE.

No. 6313. Decided March 1, 1922.

Rehearing Denied November 29, 1922.

1.—Murder—Former Jeopardy—Discharge of Jury—Judgment Nunc Pro Tunc.

Where, upon trial of murder and a conviction of manslaughter, the jury failed to agree, were discharged by the court, who failed to enter on the minutes an order showing the discharge of the jury or the reasons thereof, and afterwards the venue was changed to another county, and the original court then entered an order *nunc pro tunc*, showing such discharge of the jury, and the defendant in the county to which the venue was changed interposed a plea of former jeopardy because the jury had not had sufficient length of time to show that it was altogether improbable they could agree, etc., and contended that the failure of the court to do so renders his plea of former jeopardy good as a matter of law; held, that this contention is untenable.

2.—Same—Judgment Nunc Pro Tunc—Discharge of Jury—Practice in Trial Court.

It will not be necessary to determine the validity of the *nunc pro tunc* judgment, as the entry of such judgment is only the evidence of the judicial ascertainment that the jury should have been discharged, and not the judicial ascertainment itself, as the trial judge doubtless determined the propriety of the jury's discharge, but failed at the time to carry forward in the minutes of the court, the judgment evidencing that fact, and the defendant is left free to present the facts upon his plea of jeopardy, and there was no reversible error in the court's action to submit the plea on the facts under a proper charge of the court.

3.—Same—Plea of Former Jeopardy—Charge of Court—Requested Charge— Words and Phrases.

On motion for a new trial, and in this court, it is insisted that the omission of the word "altogether" before the word "improbable" in the

(1)

1—93 T. C. R.

court's charge was a fatal error, and defendant submitted eight special charges on the issue of former jeopardy, but the record nowhere shows a specific objection calling the court's attention to the omission of the word "altogether," and the matter can, therefore, not be reviewed by this court. Following Walker v. State, 89 Texas Crim. Rep., 76, and other cases.

### 4.—Same—Discharge of Jury—Former Jeopardy—Case Stated—Article 743, C. C. P.

It was shown that the jury retired to consider their verdict about noon on Saturday; that they were discharged about five or six o'clock on the following Sunday afternoon; that they made a report to the judge, and he questioned each one separately as to what he thought about the probability of agreeing and was advised by all the jurors that they were hopelessly disagreed; that defendant and his counsel, as well as State's counsel, were in the court-room at the time; that the judge asked the attorneys if there was any objection from either side to the discharge of the jury, and there being no objection, the jury was discharged; held, that there was no reversible error, no injury to the defendant appearing, under Article 743, C. C. P.

### 5.—Same—Self-Defense—Requested Charges—Threats.

Such threats as were shown were made during the difficulty, and there was no evidence of any antecedent threats, and the requested instruction upon threats as applied to self-defense were correctly refused. Following Armstrong v. State, 50 Texas Crim. Rep., 27, and other cases; and there being no error in the court's main charge on self-defense there was no reversible error.

### 6.—Same—Abandonment of Difficulty—Provoking Difficulty—Charge of Court.

The court not having in any way limited defendants right of self-defense by a charge on provoking the difficulty, etc., it was not necessary to give the requested charge on abandonment of the difficulty. Following Edwards v. State, 60 Texas Crim. Rep., 323, and other cases.

### 7.—Same—Experimental Evidence—Practice in Trial Court.

Where the State contended that the shot which caused the death of the deceased was purposely and designedly fired by the defendant, who contended that the shot was accidentally discharged while he and others were scuffling over the pistol, but admitted that none of their hands were burned or powder-burned from the discharge there was no error in permitting the State to prove over defendant's objection that an experiment had been made with another pistol, and permitting the witness to explain the test, and exhibiting to the jury the handkerchief which was used in the test.

### 8.—Same—Experimental Evidence—Rule Stated.

In order to make experimental testimony admissible it is not necessary that the experiment be made under exactly the same circumstances, and if the evidence showed that the experiment was made under similar circumstances or approximately similar to those which surrounded the original transaction, etc., it will be admissible in evidence. Following Hodge v. State, 60 S. W. Rep., 157, and other cases. Distinguishing Morton v. State, 71 S. W. Rep., 281· Reagan v. State, 84 Texas Crim. Rep., 468.

### 9.—Same—Experimental Testimony—Rule Stated.

In order to combat the truth of defendant's contention that the pistol was accidentally discharged during the scuffle when the witnesses claimed to have hold of it, the State introduced the burned handkerchief as the result of its experiment, and the fact that the handkerchief was of different texture from the human hand would in the present case be immaterial, and there was no reversible error

### 10.—Same—Argument of Counsel—Conduct of District Attorney—Written Testimony.

A certain State's witness who had testified at a previous trial, but for some reason neither side called him to testify upon the instant trial, and after the evidence had been closed the State's attorney, in the presence of the jury, stated that the paper he held in his hand was the testimony of said witness, and that it had been taken by the court reporter at said former trial and that he tendered the same to counsel for the defense who might read it to the jury if they desired, and also referred thereto in his closing argument; Held, that this conduct on the part of the attorney for the State, while improper, was not reversible error under the facts of the instant case, the contents of said paper not being introduced in evidence.

### 11.—Same—Rehearing—Written Testimony—Argument of Counsel.

On motion for rehearing the action of the State's attorney in offering the written testimony of a State's witness taken upon a former trial, and in referring to same in his closing argument is again urged as reversible error, but it appearing from the record that the offer was not made in bad faith, and in the absence of a showing why the witness was not placed on the stand, this court is unable to agree that the jury must have concluded that the witness's testimony would be so favorable to the State as to necessarily cause injury, its contents not having been referred to.

### 12.—Same—Argument of Counsel—Invited Error.

Where the argument of counsel for the State seems to have been made in reply to argument of defendant's counsel, there is no reversible error.

### 13.—Same—Experimental Testimony.

Where the experiment, in order to ascertain if fire from a discharged pistol would burn clothing or a handkerchief fastened around the cylinder, was of sufficient similarity to the issue made by the testimony upon the trial, there is no reversible error.

Appeal from the District Court of Cherokee. Tried below before the Honorable L. D. Guinn.

Appeal from a conviction of manslaughter; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Sanders & Sanders, Beeman Strong, Norman Shock & Gibson,* and *Chas. L. Black,* for the appellant.—On question of conduct of the Dis-

trict Attorney: Rutherford v. State, 67 S. W. Rep., 100; Laubach v. State, 12 Texas Crim. Rep., 592; Exon v. State, 33 Texas Crim. Rep., 469; Bearden v. State, 46 id., 147; Coke v. State, 54 id., 249; Jenkins v. State, 49 id., 461; McKinley v. State, 52 id., 184.

On the question that there is a clear distinction between argument on one hand and testimony on the other: Moss v. S'anger Bros., 75 Texas, 321; Fordyce v. Withers, 20 S. W. Rep., 766; Willis v. McNeill, 57 Texas, 465; Roach v. State, 232 S. W. Rep., 504; Marshall v. State, 175 id., 154; Rushing v. State, 137 id., 372; Gann v. State, 59 id., 896; Jessie v. Com., 112 Va., 887.

On question of argument of counsel, he alluded to written testimony tendered to defense: Davis v. S'tate, 54 Texas Crim. Rep., 249; Smith v. State, 55 id., 569; Wilson v. State, 194 S. W. Rep., 828; Beach v. State, 210 S. W. Rep., 540.

On question of self-defense: King v. S'tate, 9 Texas Crim. App., 556; Reeves v. State, 34 Texas Crim Rep., 486; Jennings v. State, 132 S. W. Rep., 473; Johnson v. State, 63 Texas Crim. Rep., 50; Andrus v. State, 165 S. W. Rep., 189.

On question of experimental testimony: Tensey v. S'tate, 77 Ala., 33; People v. Firoi, 123 App. Div., 174, 108 N. Y. Sup., 416; Spires v. State, 50 Fla., 121, and cases cited in opinion.

*R. H. Hamilton,* Assistant Attorney General, for the State.—On question of experimental testimony: Clark v. State, 38 Texas Crim. Rep., 30; Clark v. State, 39 id., 152; Meyers v. State, 14 Texas Crim. App., 35; Hart v. State, 15 id., 202; Dane v. State, 36 Texas Crim. Rep., 84.

HAWKINS, Judge.—Upon an indictment for murder appellant was found guilty of manslaughter and his punishment assessed at confinement in the penitentiary for two years.

This case has been before us at a former time and the opinion will be found in 85 Texas Crim. Rep., 338, 212 S. W. Rep., 166. The facts are exhaustively set out in that opinion and are substantially the same as disclosed by the record now before us. It is not necessary to repeat the facts, but reference is made to the former opinion therefor.

This case originated in Shelby County. In September, 1919, a trial was had in that county, and the jury having failed to agree they were discharged on September 14th. The court failed to enter upon the trial docket or to have carried forward in the minutes of the court an order showing the discharge of the jury on the reasons therefor. On February 26, 1920, on the court's own motion an order was entered changing the venue of the case from Sheby County to Chero-

kee county. Appellant on that date entered into recognizance bind-
ing himself to appear in Cherokee County for trial in obedience to
the order changing the venue. It having been ascertained that the
court in Shelby County had failed to enter an order at the time the
jury was discharged upon the trial in 1919, the district attorney filed
a motion in the district court of Shelby county on the 30th day of
August, 1920, seeking to have said judgment entered *nunc pro tunc*.
He caused notice to be served upon appellant, and on the 3d day of
September, 1920, the court in Shelby County, after a hearing upon
such motion, entered the judgment discharging the jury, reciting
reasons therefor, as of date September 14, 1919. Upon the 17th day
of September, 1920, another order was entered by the District Court
of Shelby County again changing the venue to Cherokee County and
appellant entered into another recognizance in obedience to the last
order. The record shows no order of the District Court of Cherokee
County transferring the case back to Shelby County, prior to the
*nunc pro tunc* judgment. When the case was called for trial in
Cherokee County appellant interposed a plea of former jeopardy.
He alleges that the jury which was discharged in Shelby County was
not held by the court for such a length of time as showed it was al-
together improbable they could agree. He also denies that he had
given his assent to the discharge of the jury. He asserts that the
District Court of Shelby County, by the order changing the venue
made in February, 1920, had lost jurisdiction of the case and had
no authority in law to enter the judgment *nunc pro tunc* as to the
discharge of the jury. He further asserts that it was necessary for
the District Court of Shelby County to have made a judicial ascertain-
ment relative to the discharge of the jury and the reasons therefor
at the time it was discharged; that the failure of the court to do
so renders his plea of former jeopardy good as a matter of law, and
that the jury upon this trial should have been peremptorily so in-
structed.

Unless we be mistaken as to the effect of our own decisions it will
not be necessary to determine the validity, or otherwise, of the *nunc
pro tunc* judgment. We agree to the proposition that there should
have been a judicial ascertainment of the facts justifying the dis-
charge of the jury, and that this should have been evidenced by a
proper entry in the court minutes. This should have been done in
the interest of orderly judicial procedure if for no other reason.
But courts operate through human agencies, and oversights and mis-
takes occur in them as well as in all other departments of govern-
ment or private enterprises. We would observe here, that the entry
of the judgment in the minutes of the court is only the evidence of
the judicial ascertainment, and not the judicial ascertainment itself.
The trial judge doubtless determined the propriety of the jury's dis-

charge, but failed at the time to carry forward in the minutes the judgment evidencing that fact. If the recitals in a judgment discharging a jury were in our State binding on a defendant as upholding or defeating a subsequent plea of jeopardy, we can well understand that a failure to enter such a judgment might be the deprivation of such a right as could well be held a bar to further proceedings by the prosecution. But our court has held although there was a judicial ascertainment upon the discharge of the jury and the judgment thereof entered of record that a plea of jeopardy raises an issue of fact, and that the party urging it is not bound by the judgment nor the recitals therein. Bland v. State, 42 Texas Crim. Rep., 286; Vela v. State, 49 Texas Crim. Rep., 588; Hipple v. State, 80 Texas Crim. Rep., 531, 191 S. W. Rep., 1150. If these opinions be accepted as announcing a sound legal proposition and the entry of the judgment does not bind the defendant, but leaves him free to present the facts upon his plea of jeopardy, then we are unable to give our assent to the proposition that a failure to enter a judgment at the time the jury is discharged will operate against the State to the extent of making the plea of jeopardy good as a matter of law. If the plea is to be sustained or defeated upon the facts, the facts remain available regardless of the existence or non-existence of a judgment. This disposes of the assignment of errors urged for failure to give special charges Numbers 1, 3, 6 and 7, and brings us to a consideration of the complaint that the court erred in submitting that issue in the following language:

. "You are charged that in passing upon the plea of former jeopardy that the burden is upon the defendant, Wyatt Rodgers, to show by the evidence that he is entitled to acquittal on such special plea. If you find from the evidence that the defendant was put upon trial in the District Court of Shelby County in September, 1919, and that the case was tried upon the indictment duly presented to the court, the pleas and evidence offered thereon in said case and the jury was charged by the judge and afterwards that said jury was discharged by the District Judge of Shelby County, Texas, before they had been together such a time as to render it improbable that they could agree on a verdict, and that the defendant did not agree for the jury to be discharged, you will, if you so find, return a verdict that you find said special plea to be true".

Article 759, Vernon's C. C. P., reads:

"The jury may be discharged after the cause is submitted to them, when they cannot agree, and both parties consent to their discharge, or where they have been kept together for such time as to render it *altogether* improbable they can agree; in this latter case, the court, in its discretion, may discharge them."

On motion for new trial and in this court it is insisted that the omission of the word "altogether" before "improbable" in the

court's charge was fatal error.  Eight special charges were requested by counsel for appellant on the issue of former jeopardy.  When we examine the objections filed to the charge at the time of trial, we find nowhere a specific objection calling the court's attention to the omission of the word "altogether."  The objection begin by excepting to the submission of the issue of former jeopardy to the jury at all, save as to special charge number one, which was to find peremptorily his plea to be true.  They then proceed with the objections, that if special number one be refused the issue ought to be submitted as contained in special charge number two, and so on through the entire eight charges.  Each of the special charges embracing the language which appellant insists should have been used by the court have connected therewith the issue of a "judicial ascertainment" at the time the jury was discharged, or some other issue involving the question which would have rendered it improper for the court to give it.  Where the trial court has entirely omitted to charge upon an issue a special requested charge designed to supply the omission may be sufficient to direct the judge's attention to the omission; but under Article 735, Vernon's C. C. P., as amended in 1913, where the judge has undertaken to cover an issue in his charge, and the manner of its submission is objectionable to appellant, the objection thereto should be sufficiently specific to direct the judge's attention to the particular thing complained of, and inform him that the special charge is designed to correct it.  (See Walker v. State, 89 Texas Crim. Rep., 76, 229 S. W. Rep., 527; Boaz v. State, 89 Texas Crim. Rep., 515, 231 S. W. Rep., 790.)  We are of the opinion that the matter now complained of was not pointed out with sufficient particularity at the time of the trial to be available to appellant at this time.  The substance of Article 759, C. C. P., was given in charge to the jury.

The testimony of the foreman of the former jury was heard.  It was shown that the jury retired to consider their verdict about noon on Saturday; that they were discharged about five or six o'clock the following Sunday afternoon; that they made a report to the judge and he questioned each one separately as to what they thought about the probability of agreeing and was advised by all jurors that they were hopelessly disagreed; that appellant and his counsel as well as counsel representing the State were in the court room at the time; that the judge asked the attorneys if there was any objection from either side to the discharge of the jury; that attorneys representing appellant consulted with him and that after this consultation both counsel for appellant and the State told the judge there was no objection to the discharge of the jury.  It further appears that by reason of the arrangement of the court room it was necessary for the judge in going to the lavatory to pass through the jury room where

they were deliberating; that on two occasions when he passed through the room and prior to the discharge of the jury, the foreman advised the judge that they would not be able to agree.

Under the evidence taken on the issue of the discharge of the former jury we have been unable to reach the conclusion that appellant was in any way injured by the manner in which it was submitted to the jury for their consideration. Article 743, Vernon's C. C. P.

Special charges numbers 9, 10 and 14 were requested instructions upon threats as applied to self-defense. As we understand the facts of this case there was no necessity for the court to charge upon threats. Such threats as were shown were made during the difficulty, and there was no evidence of any antecedent threats. The fight was practically a continuous transaction from the time it commenced on the back porch until it culminated in the killing of Billy Owens. Armstrong v. State, 50 Texas Crim. Rep., 27; Hancock v. State, 47 Texas Crim. Rep., 3; Dobbs v. State, 54 Texas Crim. Rep., 552; Penton v. State, 53 Texas Crim. Rep., 323.

We are of the opinion that the criticism directed at the charge on self-defense is unwarranted, and that no error was committed in the refusal to give special charge numbers 24, 25 and 26 upon the same issue.

The court not having in any way limited appellant's right of self-defense by a charge on provoking the difficulty, or otherwise, it was not necessary to give the special requested charge on abandonment of the difficulty. Ware v. State, 68 Texas Crim. Rep., 376, 152 S. W. Rep., 1074; Edwards v. State, 60 Texas Crim. Rep., 323; Renow v. State, 49 Texas Crim. Rep., 281.

The State contended that the shot which caused the death of Billie Owens was purposely and designedly fired by appellant. Appellant's contention was that the shot was accidentially discharged while he and his brother and his sister-in-law were scuffling over the pistol, attempting to take it away from his brother. This issue was sharply drawn. Appellant, his brother (Beeman Rodgers) and his sister-in-law all testified that at the time the pistol was fired that they and each of them had hold of the pistol, on, under and upon the barrel, cylinder and hammer, but admitted that none of their hands were burned or powder burned from the discharge. The State was permitted to prove over appellant's objection that an experiment had been made with a Colt's 45-single-action pistol; that witness placed a folded handkerchief over the cylinder of the gun and discharged the same. The witness was permitted to explain to the jury how the test was made and testified that the handkerchief which he exhibited to the jury was a clean handkerchief having no holes in it at the time he made the test. As introduced in evidence the handkerchief showed to be badly burned in a number of places, having several holes burned

in it. The foregoing facts are set out in bill of exception number 11. Numerous objections were urged to the introduction of this testimony. (a) Because there was no evidence that such experiment was made under the same or similar circumstances or conditions as those under which the shot was discharged which caused the death of deceased; (b) because there was no evidence that such experiment was made under circumstances approximately or substantially similar; (c) because the handkerchief used in making said experiment was fundamentally different in its nature and texture from the hands of the witnesses who testified to having had hold of the pistol at the time it was discharged; (d) because said experiment was not shown to have been and was not made with the same pistol or kind of pistol, neither the same kind of cartridge or powder as was used on the occasion when deceased was killed.

It is not certified as a fact in the foregoing bill that the experiment was not made with the same pistol or kind of pistol, nor with the same kind of cartridge and powder. That only appears as one of the objections urged to the admissibility of the testimony. As to the insufficiency of the bill in this particular, see Rupe v. State, 42 Texas Crim. Rep., 489. We cannot therefore consider this feature of the objections. Although the members of this court might believe that the amount of burning gas escaping with the discharge of a pistol would vary with different kinds of pistols, depending upon the looseness and alignment of the cylinder with the barrel, and the kind of powder used, yet we are not placed in a position by the recitals in the bill to pass upon the question involved. In order to make experimental testimony admissible it is not necessary that the experiment be made under exactly the same circumstances. The rule was laid down in Clark v. State, 38 Texas Crim. Rep., 38, and re-affirmed in Schauer v. State, 60 S. W. Rep., 251, as follows:

"If the evidence shows that the experiment was made under circumstances similar, or approximately similar, to those which surrounded the original transaction, and such experiment would serve to shed any light upon that transaction, it would be admissible, although such experiment might not have been made under exactly similar conditions as attended the original transaction. The want of exact similarity would not exclude, but would go to its weight with the jury."

This seems to be the settled rule in this State as illustrated in Hodge v. State, 60 S. W. Rep., 157. In that case the defendant claimed a pistol was discharged accidentally by dropping to the floor and striking on the hammer. The State contended that the pistol was so constructed that the hammer rested on a "safety notch" and could not be fired in the manner claimed by defendant. The pistol was exhibited to the jury and it was explained to them how the ham-

mer was kept on the "safety notch" and could not be fired while in that condition.  Appellant offered evidence to show that an experiment had been made with the pistol by fastening it in a secure place and striking the hammer a slight blow, and that this blow did cause the hammer to strike and explode the cartridge.  The offered testimony was excluded by the trial court on the ground that the experiment was not conducted in the same way that the shot was fired, that is, by dropping the pistol on the floor.  It is stated in the opinion that there appeared to be some objection to dropping the pistol on the floor while loaded for fear if a discharge of the pistol did occur that an accident might result.  This court held that the experiment was sufficiently similar to permit the evidence to go to the jury.  We have a somewhat like condition in the instant case.  It occurs to us it would be with considerable reluctance that a witness would place his hands around the cylinder of the pistol and permit it to be fired in order to determine the effect of the discharge upon his hands.  This brings us to a discussion of the question as to whether the handkerchief used in the experiment being of different texture and nature from that of the human hand should have caused the rejection of this testimony.

Appellant relies upon the principle announced in Morton v. State, 71 S. W. Rep., 281, and Reagan v. State, 84 Texas Crim. Rep., 468, 208 S. W. Rep., 523, that where the material question was the distance between the muzzle of the gun and the body of the victim, evidence was excluded of the result of experiments as to powder marks made upon pasteboards targets by firing a gun at varying distances, upon the ground that the human body is fundamentally different in nature and texture from the substance upon which the experiments were made.  We do not regard the question before us now to be the same by any means.  All of the authorities cited by appellant and many others have been examined.  They are in line with the rule announced in the two cases *supra*.  We have not been cited to any authority, nor have we been able to find one, where the exact point raised in the instant case has been discussed.  The question here is not at what distance from a discharged gun will powder burn or leave a mark on the human hand; but whether the discharge of a pistol will burn at all a hand immediately upon and around the cylinder?  The witnesses testified that had their hands immediately upon and around the barrel, cylinder and hammer of the pistol when it fired but that none of them were burned.  In order to combat the truth of appellant's contention that the pistol was accidentally discharged during a scuffle when the witnesses claimed to have hold of it, the State introduced the burned handkerchief as the result of the experiment.  The fact that the handkerchief was of different texture from the human hand would seem to us in the present case to be  .

immaterial. Fire will burn when brought in direct contact either with the human hand or articles of clothing. The experiment was to determine whether upon the discharge of the pistol fire was emitted around the cylinder which in all reasonable probability would have burned the hands of those claiming to hold it. As presented we think the bill shows no error. The evidence to our minds shed light upon a controverted issue. If we are correct in our view of this matter, it also disposes of bill of exception number 12, which complains of the argument relative to the experimental testimony.

Bills of exceptions numbers 2 and 3 relate to the same matter and will be discussed together. It appears from these bills that John Graham was a witness and present during the trial of the case. At a previous trial of the case in Shelby County he had been placed upon the stand by the State and testified, but for some reason neither side called him to testify upon the instant trial. After the evidence had been closed the attorney representing the State in the presence of the jury stated that the paper he held in his hands was the testimony of John Graham taken by the court reporter at the trial in Shelby County and that he tendered the same to counsel for the defense who might read it to the jury if they desired. This conduct on the part of the attorney representing the State was objected to for many reasons. The judge qualified bill of exceptions number 2 setting out the foregoing matters by referring this court to the statement of facts, and calling attention to the circumstance that appellant's attorney in cross-examination of witnesses had referred to what Graham knew about the case and that the State had at one time used him as a witness. Bill number 3 recites that while the attorney representing the State was making his closing argument to the jury he again exhibited what he said was the testimony of said John Graham taken by the court reporter upon the former trial of the case in Shelby county, and told the jury that although the State had not used the witness John Graham that he, attorney, would read to the jury the testimony of the said witness; further stating that the State had made a case against appellant, and that the reason he did not offer to place John Graham on the witness stand was because he, the said John Graham, contradicted the States case in one or two respects. This statement and conduct on the part of the attorney representing the State was also objected to by counsel for appellant for various reasons. The court qualified the bill by stating that appellant's attorney in argument to the jury had stated that Graham was one of the most credible witnesses; and certified that counsel representing the State told the jury that he was willing for the jury to take and read Graham's testimony.

The purported testimony of the witness Graham was not read to the jury nor given to them to read. As the bills of exceptions are

presented in the record we do not believe such error occurred as should operate as a reversal of the case. Unless we misapprehend the two bills of exception, they disclose a condition which frequently arises in a trial where for some reason neither side desires to place a witness upon the stand, but are maneuvering before the jury either for the purpose of forcing the opposing side to call the witness in order to get the benefit of cross-examination, or to gain some advantage from his declining to do so. We do not endorse the conduct of the attorney representing the State; but, if we understand the qualifications to the bills, he was excusable to some extent by reason of the conduct of appellant's counsel and his argument before the jury. It will be observed that nothing was said by counsel representing the State as to the contents of Graham's former testimony which could in any way have injured appellant, the statement being only to the effect that in some particulars Graham's testimony contradicted that of the State, and for that reason he was not placed upon the stand. To this extent the statement, instead of being harmful to appellant, appears to us to have been the reverse.

Twenty-seven special charges were requested, and the record contains fifteen bills of exception. We have not discussed each of them at length but none of them have been overlooked. We have examined each of the special charges and each bill of exception, and as to those not discussed by us in detail have concluded they present no error which would call for a reversal.

The judgment of the trial court is affirmed.

*Affirmed.*

ON REHEARING.

November 29, 1922.

LATTIMORE, Judge.—In a forcible motion for rehearing the correctness of our judgment of affirmance is challenged. Two grounds are presented. The action of an attorney for the prosecution in offering the written testimony of John Graham as taken upon a former trial; and also the action of such attorney in referring to same in his closing argument for the State, is most earnestly urged as being injurious to the rights of appellant. We have again examined the record and have considered carefully the propositions advanced in the light of appellant's argument and authorities cited. The statement of facts is referred to in the qualification affixed by the trial judge to bill of exceptions No. 2 which presents the major part of appellant's contention. From the statement of facts we learn that Graham was one of appellant's party on the night of the homicide; that he had driven appellant, his brother and the wives of said

two men to the scene of the killing in a car, and that said parties with Graham had gotten back in the car and were in the act of leaving said place when the fatal shot was fired. Bill of exceptions No. 2 shows that after the State had closed its rebuttal testimony, one of the attorneys for the State, in the presence and hearing of the jury, exhibited what he claimed to be testimony of John Graham stenographically taken on a trial of the case in Shelby County, and offered it to counsel for the defense with proffer of an agreement that they might read same in evidence. The specific objections made to this action as reflected by the bill were, that it was improper, that it came after the evidence had closed, defendant not having an opportunity to rebut the statement of State's counsel, that said evidence had not been used during the trial, that when said Graham had given said testimony he had been severely criticised and reprimanded by the trial judge, which statements were intermingled with the testimony, and that appellant could not afford to accept the State's challenge for said' reason; that such method was not the way to have said testimony go before the jury, the State not having offered Graham as a witness, nor said anything as to the nature and character of the testimony so tendered by the State to defendant. We have set out minutely the objections made by appellant because in our opinion the argument offered in support of the motion for rehearing does not pertain to or support any of said objections. The trial court qualified this bill by saying that appellant had brought out upon cross-examination of the State's witnesses what Graham knew about the case, and the further fact that the State had formerly used Graham as a witness in the case. The position of appellant in his motion and argument is that the State thus placed before the jury the testimony of Graham, and that the necessary effect of the offer made was to convey to the jury the belief that the testimony of Graham was in consonance with the State's contention and theory and was against that of appellant. There is nothing in the bill or the record to make it appear that the offer was not made in good faith. It is stated in the bill of exceptions that Graham was present at court but not used as a witness. We do not presume anything against the correctness or fairness of the acts of the court below or its officers, and those who object to such acts must not only affirm but show that such acts are not legal and are such as to apparently work injury to the accused. Pretermitting the question as to whether appellant sufficiently showed the fact that Graham was present at court, he might have been ill or in such condition otherwise as to render it impracticable to place him upon the witness stand, and the offer of the use of his testimony might have been made in the utmost good faith. Such presumption is rebutted in no way by appellant. We are impressed by the logical and extended presentation of appellant's views in this regard, but

find ourselves unable to agree with his assumption that the jury must have concluded that Graham's testimony would be so favorable to the State as to necessarily cause injury; nor are we able to apply any of the authorities cited to the support of the position taken. It is not claimed that the attorney offering to appellant's counsel this statement in any way referred to its contents, or that he asserted that same would support any contention of the State or overthrow any contention of the accused. Authorities whose effect is to condemn the practice of stating in the presence of the jury what witnesses who are absent would testify if present, or which hold it error for the State to refer to the probable testimony of absent witnesses, do not seem to us in point here.

Referring to bill of exceptions No. 3, we are further of the opinion that the argument of counsel for the State seems to have been made in reply to argument of appellant's counsel, and to present no reversible error.

Referring to the contention that the evidence of an experiment in order to ascertain if fire from a discharged pistol would burn clothing or a handkerchief fastened around the cylinder, we observe that this matter is fully discussed in the original opinion, but we further mention the fact as bearing upon the proposition that the experiment was of sufficient similarity to the issue made by the testimony upon the trial, that it appears from the testimony that the shooting was done with a 40-40 Colts revolver and that the pistol used in conducting the experiment was a 45 Colts revolver. We think our decision in this matter as set forth in the original opinion correct.

Being unable to agree with the contentions made by appellant in his motion for rehearing, same will be overruled.

*Overruled.*