BEULAH MURPHY V. THE STATE.

No. 23437. Delivered November 6, 1946.
Rehearing Denied December 18, 1946.

The opinion states the case.

*Aaron Sturgeon,* of Pampa, and *J. W. Spivey, Jr.,* of Borger, for appellant.

*Ernest S. Goens,* State's Attorney, of Austin, for the State.

GRAVES, Judge.

Appellant was convicted of the unlawful killing with malice of Elmo Sullivan, and given a penalty of 12 years in the penitentiary, and she appeals.

We are met in the inception of this case with a plea of former jeopardy wherein it was shown that appellant had previously been placed upon trial on this indictment on June 25, 1945; that a jury was empaneled to try said cause; that she plead not guilty therein and same proceeded to trial; that testimony was heard, arguments presented, and the jury retired to consider of their verdict; that thereafter such jury came into court and indicated their inability to agree and were finally discharged, the appellant being present and not being consulted relative to such discharge.

It was appellant's contention that the jury was kept together so short a time that their discharge without her consent was an abuse of judicial discretion on the part of the trial judge, and upon her being again placed upon trial in such cause, she was twice put in jeopardy therein.

Testimony was heard relative to such first trial and we think the following to be a fair recitation thereof: The first trial hereof was begun on Monday, June 25, 1945; a jury was finally completed on Wednesday morning; the hearing of testimony began and was completed on Thursday thereafter, there being nine witnesses heard; argument started Thursday afternoon and was concluded about 1:00 A. M. of that night, or on Friday morning. The jury then retired, and began their deliberations on Friday about 8:00 o'clock. They deliberated until about 12:00 o'clock, and at such time informed the trial court that they were unable to agree; that they were sent back to further deliberate; that they went to dinner and began again to deliberate at 1:00 o'clock; that at 3:00 o'clock they again came before the court and informed him of their inability to agree, whereupon they indicated that they stood 8 to 4 numerically, not telling how the majority stood. The court then requested that they take a little relaxation and return to their deliberations. At 5:00 o'clock they again appeared before the judge in court and again as-

serted their inability to agree, whereupon he asked each member of the jury who thought he could finally agree upon a verdict to hold up his hand. None did so. The court then asked the jurors if they thought they could probably gain anything towards reaching a verdict by being longer kept together. If they thought nothing further could be gained by longer deliberations to raise their hand. All did so, and they were thereupon discharged, appellant not being consulted relative thereto and saying nothing.

There is nothing brought forward in the record in the way of an order of the court to show the discharge of this jury by the court so we do not know whether or not such an order appears therein; suffice it to say that the failure to enter such an order would not alone render a plea of former jeopardy tenable. See Rodgers v. State, 93 Tex. Cr. R. 1, 245 S. W. 697.

We are called upon herein to pass upon whether the trial court abused his discretion in discharging this first jury as being unable to agree. The burden of proof in such matter rests upon the accused. See Schindler v. State, 17 Tex. Cr. App. 408 (412) ; O'Connor v. State, 28 Tex. App. 288, 13 S. W. 14.

It is shown by the record that it took about one day to present the testimony in this case; that the jury deliberated about four hours before announcing their inability to agree; that they then ate dinner and again deliberated for about two hours and again announced their inability to agree; that they were sent back, and in about two hours returned into court; that after announcing their continued inability to agree, they were twice interrogated by the trial judge and unanimously stated that they could not agree; that they were of the opinion that it would be useless to continue to deliberate, whereupon they were discharged. We think the careful trial judge did not abuse his discretion in deciding that it would be useless to longer hold such jury, and being convinced that they could not agree, he was correct in discharging them. It follows that appellant's plea of former jeopardy was properly overruled. See Art. 682, C. C. P.

Appellant objected to the trial court's charge in many respects and brings forward in his brief, among other objections, one directed at the paragraph in the charge relative to a provocation of the difficulty by appellant, thus limiting her right of self-defense. In order that this point might be fully understood, it becomes necessary to briefly set forth some of the facts shown.

Appellant claimed to be engaged to marry the deceased,

Elmo Sullivan, who lived by himself in a trailer camp located down an alley in the City of Borger. On the night of the killing, appellant left her home about 10:30 o'clock at night, visited a tavern or two, and "window shopped" around town until about 12:00 o'clock midnight, at which time she decided to go to the deceased's home and obtain a suitcase and an alarm clock belonging to her. Deceased was not at home and she entered his home and obtained the suitcase. She also found and read some letters to him. She then started to leave and saw him and others coming to his home. She asked deceased who was the woman with him in the car. The presence of the woman was denied, but some words passed relative thereto. Finally she decided to go home and the deceased offered to take her in his car. She attempted to enter the car on the right side and found the door locked. Her request to open the door was denied, deceased telling her to "ride the bumper," and she said, "I will," and got on the bumper. They then drove out of town a short distance, she holding on to the windshield wiper. The car was finally stopped and she again asked to be let into the car. The deceased finally opened the door and she got in. They again had some words, and in her testimony on the trial she complained for the first time that the deceased forced her to have unnatural sexual relations with him. During this performance she was struck and choked by the deceased, her head "whammed" against the car door and her arms twisted. They had some words, expressing their hate for each other, and he threatened to kill her if she disclosed his treatment of her. Eventually they returned to deceased's home. She demanded an apology from him, which he refused to make, and told her that if she ever came back to his house he would kill her. She left and went to her home, some seven blocks away, and endeavored to obtain a shotgun, but found same had been loaned to a neighbor, and the neighbor did not then have such gun. She then went to the home of a brother-in-law, and at about 5:00 o'clock in the morning she there obtained a .22 caliber rifle and some cartridges, went back to deceased's home, opened the door and said, "Well, here I am again," whereupon the deceased, who was in bed, raised up on his elbow and said, "You s-- of a b---; I will kill you," whereupon she shot him, reloaded her gun and shot him again, she being about six feet away from him at the time. Not remembering how many times she shot, she thought she was in danger of her life when she shot in her own self-defense. She went back to his house the last time, not only to obtain an apology, but also to retrieve her purse with about $200.00 in it and some of her belongings.

This story, told upon the stand, differed in some material

points from a signed statement made before the County Attorney on the day of the homicide; but be that as it may, we think the trial court was correct in embodying in his charge a paragraph on provoking the difficulty. Her acts in appearing the last time at deceased's home after the trouble with him, as detailed by her, and after she had been told to leave the place and not return, and her statement to him, not only provoked but invited the attack from this man who was lying in bed and probably asleep at 5:00 o'clock in the morning. In an exhaustive and proper charge, we think the trial court was correct in thus charging on a provocation of the difficulty. As sustaining appellant's position herein, we are quoted to at length from her testimony recited from the witness stand, which is the basis of her plea of self-defense. There was a signed statement made by appellant on the day the deceased was killed which was in some material aspects contradictory to portions of her testimony on the stand and was not very helpful to her in certain crucial points in her testimony.

Appellant's third point of error complained of herein is shown by her Bill of Exceptions No. 16, that after Florence Connally had testified as to appellant's good reputation for being peaceable and law-abiding, "upon cross-examination by the State, but over the objection of the defendant, the State was allowed to cross-examine said witness and elicit said witness to testify to the effect that the defendant had been keeping company with Elmo Sullivan, the deceased, for quite a long time prior to his death and that the defendant, Beulah Murphy, sometimes drank intoxicating liquors, to which questions the witness answered in the negative." Evidently the asking of the question alone was all that could be classed as objectionable; and we note that the association together of appellant and the deceased was testified to by her while on the stand, as well as in her statement, even to the extent of stating that they were engaged to be married. Relative to the drinking of intoxicating liquor, in her statement made to the County Attorney and introduced in evidence, there is contained a statement that appellant and deceased drank half a quart of "sloe gin" at his home earlier in the night. It is noted, however, that in her testimony she denied the drinking of this "sloe gin," saying that the deceased drank the half-quart, but in such testimony she admitted that before leaving home she had a toddy, hot rum and water mixed together, and one drink. She further testified: "As to the habit of drinking, I had drank some along," but did not drink at Sullivan's home. Under these facts, we do not think the mere asking of the question was an error of any importance, if error at all.

Bill of Exceptions No. 17 is concerned with the fact that while undergoing cross-examination appellant, over objection, was caused to testify that "she had been married more than once and to more than one man; that she had been married to Louis Burks and Joe Murphy and that she had been married to Joe Murphy twice, and that she obtained a divorce from Joe Murphy once and that Joe Murphy got a divorce from her once, all of which evidence went to the jury."

It is contended that the case of Lasater v. State, 227 S. W. 951, is decisive of this point in this case. In that case, on motion for rehearing, Judge Lattimore granted such motion, mainly on the ground that it was shown by a peace officer that he had arrested the accused 17 years before on a charge of seduction; the reversal being predicated on the failure to show an indictment or complaint, and further, on account of the remoteness of the charge. The opinion then continues:

"In addition to the above, we have concluded that it was material error to allow the state to place before the jury facts relative to the marriages of appellant and that he had been sued by each of his wives for divorce. Such facts seem in no way related to the transaction which involved this unfortunate homicide, nor to shed any legitimate light thereon."

In the instant case we have presented an entirely different situation. In appellant's written statement, introduced by the State over appellant's objection to the whole thereof, it is shown that she had stated therein that: "My name is Beulah Murphy. I am 38 years old. I have lived in Borger this last time about one year. I am divorced. Joe L. Murphy was my husband's name." The testimony shows that this Mrs. Beulah Murphy visited the deceased's trailer house about midnight of the night of the shooting and was with him until about five o'clock in the morning, at which time she killed him; that she claimed that they were engaged to be married in the Spring; and under the peculiar circumstances of this case, we think her divorce from Joe Murphy was admissible.

That leaves in this bill only the statement relative to the divorce from Burks. In that connection, it is shown by appellant's further testimony that she had been divorced from another man, Leo Bailey, whom she had married at McLean, Texas, and from whom she was also divorced. We find no objection in the record to the testimony as to the Bailey divorce. We, therefore, think this bill is defective in that it couples the Murphy divorce and the Burks divorce together, the Murphy divorce

being admissible. Consequently, a portion of the testimony being admissible, the court properly overruled the objection. After it was shown that appellant was a woman who had been married, the fact that she was no longer married could not have harmed her in her intention to marry the deceased and in her conduct with and thus visiting him on the night of the killing.

Bill No. 18 relates to the testimony of A. J. Jerman wherein he was allowed, over appellant's objections, to testify that the reputation of the deceased for being a peaceable and law-abiding man was good. It is noted herein that appellant testified that when the deceased had put her out of his house by bumping her out with his knee, he said to her that if she returned he would kill her; and also that when she did return armed with the gun, he cursed her and said, "I will kill you"; and that upon a movement made by him, she shot him; and as shown by the record, she shot him three times, powder burning his face. Under this state of facts, in a comprehensive charge, the trial court instructed the jury on the law of self-defense, as well as on the law of threats. It has been held in a long line of cases that where self-defense and threats made to the accused are in issue, the State could show the good reputation of the deceased for peace, even though the accused had not attacked the reputation of the deceased. See Branch's Ann. Tex. P. C., p. 1176, sec. 2095; also Vernon's Ann. Tex. P. C., Vol. 2, p. 770, Art. 1258. In one of our late opinions, Chappell v. State, 124 Tex. Cr. R. 187, 61 S. W. (2d), 842, 843, we held:

"In bill of exception number six appellant brings forward complaint that over his objection the state was permitted to prove by several named witnesses that deceased bore the general reputation of a kind and inoffensive man, and not as one who was of a violent and dangerous disposition. The court admitted the testimony complained of on the ground that there was evidence in the record to the effect that a time previous to the killing, deceased, in appellant's presence, had cursed and threatened to kill him. Article 1258, P. C. The following authorities, among others, support the court's action." (Citing many authorities).

We do not think the cited case of Pollard v. State, 45 S. W. (2d) 618, to be in point here. In that case there were no antecedent threats, but only such as arose in the fatal difficulty and as res gestae of the killing and not antecedent thereto. We think because of such plea of self-defense and evidence as to threats, this testimony was admissible as to deceased's reputation for peace.

A further bill complains because the witness, Dale Lane, was allowed to testify as to the fact of there being powder burns upon the face of deceased, and that a gun held within 6 to 12 inches of an object would powder burn such object when fired thereat; that if farther than a foot away no powder burn would have been evident. This man had been a peace officer for about 16 years and testified that he had occasion to observe such matters in several instances and knew how far powder burns would burn, etc. We think he was qualified to give his opinion as to how far away these shots were fired relative to the burns.

In a comprehensive charge, the trial court charged on every theory presented by the evidence herein, and after having carefully gone over all bills of exception, we are of the opinion that no error is shown herein.

Thus believing, the judgment will be affirmed.

### ON MOTION FOR REHEARING.

HAWKINS, Presiding Judge.

We think the question of alleged former jeopardy was properly disposed of in our original opinion. It is not thought necessary to write further thereon.

Appellant urges that we were in error in holding the evidence raised the issue of provoking the difficulty. He cites Crow v. State, 48 Tex. Cr. R. 419, 88 S. W. 814, and other cases which hold that although accused seek a party with whom prior trouble has occurred, that if accused does nothing or says nothing calculated to provoke an attack from said party the issue of provoking a difficulty is not raised. We are in complete accord with such principle. It appears to be without application here. Appellant seems to exclude it by her own testimony. After detailing at length the trouble with deceased she says he ordered her out of his house, and told her if she ever came there again he would kill her. She left, procured a gun, returned to deceased's house, entered with the gun and said, "Well, here I am again." Whereupon, she testified, deceased made a demonstration which caused her to shoot him. We remain of opinion that under the facts here present the issue of provoking the difficulty was raised.

From the motion for rehearing it appears that appellant has construed our original opinion to mean that because it was claimed by appellant that deceased made a threat to kill her at the time she shot him it would warrant the State in proving

1

that deceased's general reputation was that of a peaceable and law-abiding man. It was not intended to so hold. If prior threats are made by deceased directly to accused, or if made to other parties prior to a killing and put in evidence by accused, proof of such prior threats authorizes the State to introduce evidence of the general reputation of deceased as a peaceable person. It was not the threat claimed by accused to have been made at the time she shot deceased which made evidence of his general reputation admissible, but the evidence of a prior threat claimed by appellant to have been made when deceased ordered appellant out of his house and admonished her not to return.

Appellant complains because this court did not discuss his bill of exception number eight which embraces an objection to the trial court's instructions to the jury for not having advised the jury that the State was bound by certain exculpatory statements contained in appellant's confession which had been introduced in evidence by the State. The statements referred to furnished no defense to the killing, but related solely to incidents claimed by accused to have occurred before she and deceased returned to his house.

Bill of exception number twenty, called to our attention in appellant's motion for rehearing, with the statement that same was not discussed in our original opinion, has been again examined, and is deemed without merit and is not thought to call for discussion.

Believing the case to have been properly disposed of in our original opinion, the motion for rehearing is overruled.