RICHARD THOMAS MURDOCK V. STATE.

No. 24951. November 15, 1950.
State's Motion for Rehearing Denied (Without Written
Opinion) January 10, 1951.

*L. F. Sanders,* Canton, for appellant.

*Tom H. Prestridge,* Criminal District Attorney, Canton, *Joe Tunnell,* Special Prosecutor, Grand Saline, and *George P. Blackburn,* State's Attorney, Austin, for the state.

WOODLEY, Judge.

The conviction is for murder without malice upon an indictment charging that offense. The punishment was assessed by the jury at two years in the penitentiary.

The case was tried March 20, 1950. A prior trial held on April 11, 1949, resulted in a hung jury, but no order was entered upon the minutes declaring a mistrial. The docket entry shows "Jury unable to agree and are discharged."

Appellant filed a plea of former jeopardy because of such previous trial, which appears to us to be based solely on the failure of the court to enter judgment other than the docket entry referred to.

It appears that at the former trial the case was submitted to the jury at 11 A.M. and they deliberated until about 5 P.M. except for the lunch hour; that upon reporting to the court as to their numerical standing, and informing the court that they were unable to agree, they were again retired and deliberated until about 6 P.M. The jury was then discharged after they had informed the court that they could not agree. Appellant's motion alleged that the discharge of the jury was over the state's objection and without the consent or approval of appellant.

The trial court declined to hear testimony tendered in support of the motion and overruled same.

Testimony of a member of the jury was heard upon the motion for new trial, but such testimony did not suggest the probability that a verdict could have been agreed upon by further deliberation.

Art. 682, C.C.P., authorizes the judge in his discretion to discharge the jury "where they have been kept together for such time as to render it altogether improbable that they can agree."

When a jury is so discharged, Art. 684, C.C.P., provides that "the cause may be again tried at the same or another term."

An order of the judge discharging the jury, declaring a mistrial and stating the ground therefor, should have been entered in the minutes of the court.

However, mere failure to enter such order, does not require that the accused be discharged upon the ground of former jeopardy. See Murphy v. State, 149 Tex. Cr. R. 624, 198 S.W. 2d 98; Rodgers v. State, 93 Tex. Cr. R. 1, 245 S.W. 697.

The order made by the judge in so discharging the jury may be entered at any time, if necessary by nunc pro tunc order, so as to make the court's minutes correctly reflect the court's proceedings.

Neither the bills of exception nor the plea of former jeopardy complain that the jury was not in fact kept together for such time as to render it improbable that they could agree upon a verdict. No issue was therefore raised to be passed upon by the jury.

The sufficiency of the evidence is questioned:

This unfortunate tragedy occurred in the city of Grand Saline about midnight of the night of December 13, 1947. Six young men were riding in a 1947 Fordor Ford automobile belonging to Arthur Lynn Crocker, one of the occupants, and driven at the time in question by Harold Lloyd Dorough. The deceased, James David Mullican, was riding on the rear seat, and on the right side. They had been to Gladewater and were heading for Wills Point. The evidence discloses that there had been considerable drinking of beer during the course of the evening. When they got to Grand Saline, the young men turned off the highway and went to a place where there was a Christmas tree, and drove around the tree two or three times. They then drove on Main Street, passing in front of the M and M Hotel.

Eulen Smith, one of the occupants of the car, testified: "* * * At that time we were going down Main Street, fixing to turn onto Highway 80 at the red light in front of the hotel. We were going to Wills Point, and we heard this noise and James David said 'I have been hit.' When he said that we thought he was kidding, and then he started kind of fading away, and holding his side, and we took him up highway 80 and went to the hospital and took him in the hospital. * * * I stayed at the hospital about three hours, something like that. I was present when Mullican died."

Smith further testified that he saw "an image" standing in front of the hotel about 15 feet from the car. He was unable to say that the "image" was a person.

A bullet hole was found in the car on its right side, located under the rear glass and about 15 inches above the tire.

A bullet taken from the body of the deceased, and the appellant's 38 caliber pistol were examined in the laboratory of the department of public safety. The bullet was identified by weight as a 38 caliber bullet, but the expert witness who made the examination testified that it could not be determined whether or not the bullet was fired from appellant's gun.

The state sought to connect appellant with the shooting by statements testified to have been made by him to others.

Barney Winn, a farmer, testified that about 1:30 A.M. on the night of the tragedy he had a conversation with appellant. The witness testified: "* * * On that occasion the defendant said he shot at a car, to puncture the tire I guess. He kept on talking and he said he wished the people would come back, that he would like to see what kind of hole he put in the car. At the time he made that statement to me, Joel Prestridge was standing in our presence. Then I walked off around the corner to see if I could find the fellow I was supposed to go home with."

On cross-examination, Winn testified: "* * * he said some boys were making a run around the christmas tree and came back down the street and like to have run over him and the dog, and said he shot at the tire to puncture it.

"As to whether or not I dispute any testimony that the reporter took down before, I do if she said I said he shot at the car. I didn't say anything that record shows is wrong. I said he told me he shot at the tire, and then he said he wanted to see what kind of a hole he put in the car. You ask if there was anything said that night about a dog between me and Richard Murdock. He said he tried to run over his dog, him and his dog, that the boys tried to run over him and his dog."

The witness further testified that at the time of the conversation with appellant he did not see a dog.

Gene Graves, a highway patrolman, testified: "I know Richard Murdock. On or about December 13, 1947, I had occasion to be in Grand Saline and talked with Richard Murdock. We stopped there to inquire from Mr. Murdock about a Ford we had been chasing, and he told us that he had seen the car and didn't know who was in it, and that he had shot at a tire when it tried to run over him, but he didn't think he hit it."

On cross-examination, he testified: "Based on my knowledge at the time I talked with the defendant, I don't know whose car I was chasing, who it belonged to. I don't know who we were chasing at all."

Joel Prestridge gave the following version of the conversation with appellant in the presence of Barney Winn: "Richard Murdock walked up to where me and Barney Winn was, and I asked him if he had seen my nephew, Walter Prestridge, and he said he hadn't, and he up and said he would hate to kill an innocent man, but he would like to shoot that fellow between the eyes, and some patrolmen drove up about that time and he went out to where they was. That was somewhere around one o'clock." And on cross-examination he testified: "I don't remember him saying anything about them running over him and his dog."

Appellant did not testify.

No witness testified to having seen appellant in the vicinity of the M and M hotel at the time in question.

There was evidence that a car resembling that in which the young men were riding had been traveling the highways at a terrific speed, and that officers had given chase. The evidence raised a strong suspicion that the car in which deceased was riding was the car which the patrolmen had been unable to overtake—that it was appellant who fired the shot which struck the deceased, and that his statement referred to the car in question and no other.

It may be observed that if appellant's statement referred to the car in which deceased was riding, his admission is that he fired at the tire, and not that he wantonly fired into a passing car, or fired with intent to injury any person who might be in the car.

We are constrained to agree with our state's attorney that the evidence is insufficient to exclude every other reasonable hypothesis than that of the guilt of appellant.

So believing, the judgment is reversed and the cause remanded.

Opinion approved by the court.