HOUSTON & TEXAS CENTRAL RAILROAD COMPANY v. H. S. AND
W. H. RAMSEY.

Decided October 16, 1906.

**1.—Person Walking on Railroad Track—Duty of Engineer.**

An engineer is not required to use any means to stop his train as soon as he discovers a man on the track; he has a right to presume that the man will leave the track in time to avoid injury. It is only after the engineer has good reason to believe that the man is unconscious of his peril, or unable to avoid the danger, that he is required to use all the means in his power to stop the train.

**2.—Same—Negligence—Evidence.**

Evidence considered, and held sufficient to support a finding that an engineer was negligent in failing to use the means at his command to avoid injuring one upon the railroad track.

**3.—Evidence of Experiments.**

Evidence of experiments made by plaintiffs for the purpose of showing at what point on the track the engineer could have seen the deceased considered, and held admissible. Evidence of this character is admissible when the experiments are made under circumstances substantially similar, in all material particulars, to those obtaining at the time of the occurrence with regard to which the evidence is offered.

Appeal from the District Court of Brazos County. Tried below before Hon. J. C. Scott.

*Baker, Botts, Parker & Garwood* and *Andrews, Ball & Streetman,* for appellant.—It was error to admit evidence of an experiment made by the witness for the purpose of proving that the engineer could have seen deceased from a certain point, when the circumstances and surroundings in the experiment were wholly different from those attending the engineer at the time of the injury to said deceased. 12 Am. & Eng. Enc. of Law, 406; Chicago & A. Ry. v. Logue, 47 Ill. App., 292; Lake Erie & W. Ry. v. Mugg, 132 Ind., 168; Alabama, G. S. Ry. v. Burgess, 22 So. Rep., 171; Smith v. Reeder, 28 Pac. Rep., 890; Morton v. State, 71 S. W. Rep., 282; Missouri Pac. Ry. v. Moffatt, 44 Pac. Rep., 607.

Employes in charge of running trains do not owe a person, whose presence on a railroad track is under such circumstances as that he would be considered a trespasser thereon, the duty of keeping a lookout for his safety. They are authorized to assume that a person upon the track is in possession of all his faculties, and will leave the track in time to avoid injury, and to operate the train on this assumption until they realize that he will not do so. Missouri, K. & T. Ry. Co. v. McGlamory, 89 Texas, 635.

*Doremus & Butler* and *C. H. Steele,* for appellees.—The court did not err in admitting the evidence of an experiment made for the purpose of proving that the engineer could have seen deceased from the railroad crossing south of the section house down to the point where deceased was struck. Olivaras v. San Antonio & Aransas Pass Ry. Co., 8 Texas Ct. Rep., 979; St. Louis, M. & S. E. Ry. Co. v. Shannon,

88 S. W. Rep., 851; Ayres v. Wabash Ry. Co., 88 S. W. Rep., 608-610; Burg v. Chicago, R. I. & P. Ry. Co., 57 N. W. Rep., 683.

REESE, ASSOCIATE JUSTICE.—On or about August 3, 1903, John Ramsey came to his death by being run over by an engine pulling a regular passenger train of the Houston and Texas Central Railroad Company.

Deceased was at the time riding on a railroad velocipede going south from the watch-tower at the crossing of the International and Great Northern Railroad and the Houston and Texas Central Railroad, just below College Station. The engine which struck and killed him was attached to the regular passenger train going south. The train was due at College Station at 7 o'clock p. m. and arrived there about ten minutes later. The accident occurred between one and two miles south of that point.

This suit is brought by the father and mother of the said John Ramsey to recover damages for his death. It is alleged, in substance, that the engineer in charge of the engine discovered the presence of deceased upon the track, and his peril from the approaching train, in time to stop the train by the use of the means under his control, with safety to the passengers and train, and thus avoid injuring the deceased, and that he failed to do so, but recklessly and willfully ran the deceased down with his engine.

Defendant answered by general demurrer, general denial, pleas of contributory negligence and specially denied that the death of deceased Ramsey was caused by the negligence of defendant in that defendant after the discovery of the peril of deceased used every means in its power consistent with the safety of the train to avoid the injury to deceased.

Upon trial before a jury there was a verdict for plaintiffs for $2,000, and from the judgment defendant prosecutes this appeal.

It is apparent from the record that the deceased was a trespasser upon appellant's track at the time he was killed and that appellant owed him no duty except to use all the means in its power, consistent with the safety of the train, to avoid injuring him, after his peril was discovered. (Texas & Pac. Ry. v. Breadow, 90 Texas, 31; Texas & Pac. Ry. v. Staggs, 90 Texas, 458.) This was recognized by the trial court in the submission of the case to the jury and is not controverted by appellees.

The issues were, (1) did Wilson, the engineer in charge of the engine, discover the peril of John Ramsey in time to have avoided the injury to him by the use of all of the means under his control for stopping the train, consistent with the safety of the train; and (2) did the engineer, after actually discovering the peril of Ramsey, use all of the means under his control for stopping the train, consistent with its safety.

The first two assignments of error complain of the action of the trial court in overruling appellant's motion for a new trial on the grounds that, (1) the verdict is unsupported by the evidence and contrary to the uncontradicted evidence, and (2) that it is contrary to the overwhelming weight and preponderance of the evidence and manifestly the result of passion and prejudice on the part of the jury.

At the time of the accident the train was running not less than thirty-five miles, and probably forty-five miles an hour on a straight track with nothing to obstruct the view between the engineer on the engine and Ramsey on the velocipede. The wind was from the south, the engine going south and the time was a little after sundown. Some of the witnesses place it earlier, but the testimony most probably true, being that of the engineer as to the scheduled time of the arrival of the train at College Station at 7 o'clock p. m., which is not disputed, and the fact that on the day of the accident the sun set at 6:56 o'clock p. m., showed the time to have been a little after sunset. The engineer further testified that he arrived at College Station eleven minutes late, which is not disputed by the evidence, and that he was in consequence running fast to make up the time. One of appellees' witnesses, however, a passenger on the train, fixes the time as early as 3 o'clock p. m. and the other witnesses vary in their testimony from that time to about sundown.

There was a road crossing which was shown to be 999 yards north from the point where Ramsey was struck. South of that point is an elevation in the track which the engineer calls a "hog-back," the top of this hog-back being, according to a plat introduced in evidence showing these distances, the correctness of which is not disputed, 750 yards from where Ramsey was struck. The engineer testified that as soon as he saw the object on the track ahead of him he blew the whistle and shut off steam, but did not discover, at that time, that the object was a man; that as soon as he saw it was a human being he made an effort to stop the train, that he applied the emergency with full force, being all the power he had, and that his whole attention was directed to nothing else but trying to stop the train and give the alarm for the man to get off the track.

The engineer was not required to resort to any means to stop his train as soon as he saw that there was a man on the track. He had a right to presume that he would leave the track in time to avoid the danger. It was only after he had good reason to believe that Ramsey was unconscious of his peril or unable to extricate himself that he was required to use all the means in his power to stop the train. The testimony of the engineer himself shows that he discovered that the object on the track was a man "just after passing the hog-back" the top of which, as we have seen, was 750 yards from where Ramsey was struck. He also testified that as soon as he discovered that it was a man on the track he at once put in motion all the means at his command to stop the train and began to blow the whistle as rapidly as it could be done. From this the jury might reasonably conclude that as soon as the engineer discovered that the object, which he had seen some distance back, was a man he realized his peril and the necessity for a resort to the extraordinary means provided to stop the train. This discovery was made, as we have seen, according to the testimony of the engineer "just after passing the hog-back." This language, it is true, is indefinite and does not fix the point with accuracy where the discovery of Ramsey's peril was made, but from it the jury might reasonably conclude that it was at such distance from Ramsey that by the

prompt use of all of·the means at his command the engineer could have either stopped the train before reaching him, or at least so checked its speed that he could have gotten off the track in time to escape injury. The testimony as to the distance within which the train could have been stopped by ·the use of the emergency appliances, even without reversing the engine, varied from 900 feet to 1,300 feet, that is from 300 yards ·to 433 yards, the engineer himself testifying that it could have been stopped in 400 yards. Four hundred yards from where Ramsey was struck was 350 yards from the top of the "hog-back." It must be concluded from the testimony of the engineer that the rapid whistling from the engine began when he discovered Ramsey's peril, and there was evidence from some of the passengers that the engine ran 300 or 400 yards after the whistling began before striking Ramsey. One witness says he determined the distance at the time by counting the telegraph poles from the point when the whistling began to where Ramsey was struck and found it to be 15 telegraph poles, which are 100 feet apart.

There is a sharp conflict between the testimony of the engineer, the only witness for appellant, and the other witnesses, some of them passengers on the train, and others on the .ground at or near the place of the accident, as to what efforts were made to stop the train. Some of the testimony is positive to the effect that there was no check in the speed of the train until Ramsey was struck. Passengers on the train testified that they could not perceive any check in the speed, which was very great. It seems not to be disputed that the train ran 265 yards after striking Ramsey before stopping. This was only 35 yards less than was required to stop the train according to some of the evidence, and only 133 yards less than was required according to the greatest estimate made by the engineer himself. It is a reasonable inference from the testimony of the engineer himself that he saw Ramsey and realized his peril at a greater distance than this. It is true that the engineer testifies in the strongest terms that as soon as he saw that it was a human being on the track he at once used all the means at his command to attract his attention and also to stop the train, using the air brakes upon the wheels of the engine and cars to their fullest capacity, but the effect of the testimony of appellees' witnesses is to contradict this and to show that, in fact, no effort was made to stop the train until the man was struck, and the distance the train ran after he was struck tends strongly to corroborate them.

In this state of the evidence we can not say that the verdict is unsupported by the evidence, or is so contrary to the overwhelming weight and preponderance of the evidence as to justify the conclusion that it is the result of passion or prejudice and not of a fair consideration of the evidence. by the jury. The assignments of error presenting these propositions must be overruled.

On the trial of the cause appellees offered certain evidence of experiments made to test how far a man could be seen on the track south of the road crossing by persons standing on the crossing. The experiments were made in the afternoon, one about 3 :30 o'clock and the other late in the afternoon, the exact time not being stated. In the one case a man about six feet high and in his shirt sleeves, wearing a white

shirt, was placed on the track about where Ramsey was killed and the witnesses took their positions on the track at the road crossing. This road crossing is about 1,000 yards from the point where the man was placed. The witnesses stated that the man could be plainly seen at the point where he was first placed, and that as he came up the track to where the witnesses stood at the crossing he could be plainly seen every foot of the way. The other experiment was made under substantially the same circumstances, the witness being at the crossing and watching two persons walking down the track, who were known by the witness to be there, the result being the same. Appellant objected to the introduction of this testimony on the ground that it was immaterial and irrelevant, in that the circumstances under which the experiments were made were entirely different from those prevailing at the time of the accident insofar as they affected the ability of the engineer to see Ramsey. That in the one case the engineer was sitting in the cab of his engine travelling at the rate of about 45 miles an hour against the wind, and Ramsey sitting on a railroad velocipede on the track going from him, the time being about or after sundown, and the engineer not knowing or expecting the presence of Ramsey on the track. In the cases of the experiments, the time was in the afternoon, the object with which the tests were made was in each case men standing upright on the track at a point where the witnesses knew they were, the witnesses themselves standing on the ground some three or four feet lower than the engineer in his cab. The purpose of the testimony, and the only purpose for which it was admissible, was to show at what point the engineer became aware of the peril of Ramsey.

Evidence of this character is admissible when the experiments are made under circumstances substantially similar in all material particulars to those obtaining at the time of the occurrence with regard to which the evidence is offered. (12 Am. & Eng. Ency. of Law, p. 406 et seq. and cases cited.) Under this rule a majority of the court are of the opinion that the evidence in question was admissible. The writer of this opinion is inclined to differ from this conclusion, but holds that the error, if any, was harmless and could not have influenced the jury or affected the verdict. Justice Pleasants concurs in the view that if not admissible the error was harmless.

Under the instructions of the court the jury could only have considered the evidence as bearing upon the question as to where the engineer was, with reference to Ramsey, at the time he first actually became aware of his peril from the approaching train. Taking into consideration the engineer's own testimony on this point, which has been heretofore shown, I do not think the evidence objected to was calculated to influence their finding on this issue notwithstanding that was its purpose, and hence the admission of the evidence does not constitute reversible error. I agree with the majority of the court that the assignments of error presenting these objections should be overruled.

Other assignments of error in the record complain of the charge of the court and of the action of the court in refusing instructions requested by appellant. None of these assignments can be sustained. The court's charge, together with the instruction given at the request

of appellant, contains a clear and comprehensive statement of the law applicable to the issues presented by the pleadings and the evidence.

We find no error in the record requiring a reversal of the judgment and it is therefore affirmed.

*Affirmed.*

Writ of error refused.