HOUSTON, E. & W. T. RY. CO. v. SHERMAN et al.

No. 1086—5314.

Commission of Appeals of Texas, Section B.
Oct. 14, 1931.

242

Baker, Botts, Parker & Garwood, Stevens & Stevens, and Garrison & Watson, all of Houston, and F. J. & C. T. Duff, of Beaumont, for plaintiff in error.

Smith, Combs & Matthews, of Liberty, for defendants in error.

RYAN, J.

This suit was instituted in the district court of Liberty county by Mrs. Settie Sherman in her own right and as next friend for her seven minor children, against the railway company, to recover damages for the death of J. S. Sherman, her husband and the father of said minors, as the result of a collision between a Ford truck driven by the deceased and a passenger train operated by the railway company, at a public road crossing, occasioned by the alleged negligence of said company.

The grounds of the company's negligence relied on by plaintiffs may be succinctly stated as follows: (a) In failing to properly construct and maintain said crossing, as to make it safe and convenient for the use of the traveling public; (b) in failing to sound the whistle, as required by law, at least 80 rods before reaching said crossing; (c) in failing to ring the bell on said locomotive at least 80 rods before reaching the said crossing and continuing to ring the same until the engine had crossed over it; (d) in failing to exercise ordinary care and to use all the means within the power of the road's operating agents, servants and employees, to avoid said collision and to save the life of the said J. S. Sherman after they saw him in a perilous position and realized his danger; (e) in failing to exercise ordinary care in approaching said crossing, in that the engineer, fireman, and other employees having charge of said passenger train failed to keep a proper lookout ahead for the deceased or for other persons on or about to go upon said crossing and to give the necessary warning signals of the approach of said passenger train; (f) in failing to reduce the speed of said train after they saw and realized the peril in which the said Sherman was situated, which they could easily have done in the exercise of ordinary care and saved his life.

Plaintiffs then allege the amount of their damages as $70,250, for which they sued.

The defendant railway company answered by general demurrer, general denial, that the road traveled by the deceased was not a public road, but a private road constructed specially for the use and benefit of the owners of lands adjoining each side of the right of way, had never been dedicated to public use or recognized by the commissioner's court of Liberty or San Jacinto counties, and was not such a road under the law as to require compliance with the statutory duties of blowing the whistle and ringing the bell eighty rods from the crossing, and by a special plea of contributory negligence.

By supplemental petition, plaintiffs below alleged that said road was a public road by prescription and use, that the crossing across its track was opened and maintained by the railway company for the use of the public, and the road has been for more than fifteen years, and is, freely used and traveled by the general public by and with the consent of the landowners across whose land said road extends.

At the close of the evidence, the railway company requested a peremptory instruction in its favor, which was denied, and the case was submitted to a jury upon special issues, in answer to which they found: (1) That the road upon which the crossing where the collision occurred was a public road at the time of the accident; (2) that said crossing was being used by the public with the knowledge and consent of the railway company prior to and at the time of the accident; (3) that the operators of the train did not blow the whistle at least eighty rods from said crossing, and sufficiently near to same, to be reasonably calculated to give warning to persons about to use it; (4) that such failure to blow the whistle was negligence; and (5) a proximate cause of the collision and death of J. S. Sherman; (6) that the operatives of the train did not, upon approaching the crossing in question, begin to ring the bell at least eighty rods from said crossing and continue to ring the same until the crossing was reached, (7) which was negligence, and (8) a proximate cause of Sherman's death; (9) that the engineer, fireman, and other employees having charge of the train failed to keep a proper lookout for the deceased or other persons on or about to go upon said cross-

ing, which (10) was negligence, and (11) a proximate cause of the collision and death of said Sherman; (12) that the engineer in charge of and operating the train in question failed to exercise ordinary care to use all the effective means within his power, consistent with the safety of the train and passengers, to avoid the collision after he discovered the deceased about to go upon the crossing and realized his danger,' which (13) was negligence, and (14) a proximate cause of the collision and death of the deceased.

In answer to special issue No. 15, the jury answered that the deceased, as he approached the crossing in question, did not fail to stop his truck a safe distance from said crossing, after he had entered upon the right of way, for the purpose of looking and listening for the approaching train. The effect of this answer was that the deceased did stop his truck a safe distance from the crossing, after he had entered upon the right of way, for the purpose of looking and listening for the approaching train.

The court then, conditioned upon the jury answering special issue No. 15 in the affirmative (instead of in the negative as they did answer it), submitted special issue No. 16 as follows: "Was the deceased in not stopping his car for the purpose of looking and listening for said train, after he entered upon the right of way, and as he approached the crossing, negligent as that term has been herein (in the charge) defined?" The jury answered: "No."

The court then, conditioned upon the jury answering special issue No. 16 in the affirmative (instead of in the negative as they did answer it), submitted special issue No. 17, as follows: "Was such negligence on the part of the deceased in failing to stop his car, after he entered upon the right of way, for the purpose of looking and listening for the approaching train, a proximate or contributing cause of the death of the deceased?" The jury answered: "No."

Special issue No. 18 was as follows: "Did the deceased as he approached the crossing in his truck after entering upon the right of way and within a reasonable distance from the crossing, fail to look for an approaching train?" The jury answered: "No." The effect of this answer, of course was that the deceased did look for an approaching train.

The court then conditioned upon the jury answering said issue No. 18 in the affirmative (instead of in the negative as they did answer it) submitted special issue No. 19 as follows: "Was the failure of the deceased to look for the approaching train after entering upon the right of way negligence as that term has been defined?" which the jury answered: "No."

Conditioned upon issue No. 19 being answered in the affirmative issue No. 20 was

submitted viz.: "Was such negligence on the part of said J. S. Sherman a proximate or contributing cause of his death?" which was answered: "No."

Then in answer to issue No. 21 the jury found that the deceased did not fail to listen for the approaching train—the effect of which was that he did so listen.

Conditioned upon issue No. 21 being answered in the affirmative issue No. 22 answered "No" by the jury was submitted as follows: "Was such failure on the part of the deceased to listen for the approaching train, negligence?" and, conditioned on said issue No. 22 being answered "Yes," issue No. 23 was submitted as follows: "Was such negligence, if any you have found, a proximate cause of the collision and death of J. S. Sherman?" which the jury answered: "No."

The jury assessed total damages against the railway company in the sum of $45,000, of which $24,000 was apportioned to the widow and $3,000 to each of the seven minor children.

The trial court accordingly so rendered judgment for the plaintiffs against the railway company, which was affirmed by the Court of Civil Appeals. 10 S.W.(2d) 243.

■■ Plaintiff in error's first assignment in its application for writ of error to the Supreme Court complains of the trial court's refusal to peremptorily instruct a verdict for it, on the ground that the deceased, with an unobstructed view, drove upon the track in front of an approaching train, and was therefore guilty of contributory negligence, as a matter of law. The question of contributory negligence was appropriately submitted to the jury, and they found against the company's contention, based on sufficient evidence to go to the jury on that issue.

The Court of Civil Appeals has, at some length, detailed this evidence [10 S.W.(2d) pages 246 and 247], which it is unnecessary to repeat here.

What is said above applies to plaintiff in error's second assignment of error to the effect that the deceased was guilty of contributory negligence as a matter of law, in that, the jury having found that, after entering upon the right of way, he stopped his truck, looked and listened, he must have seen the approaching train. This, like the first assignment, is based upon the assumption that the evidence is undisputed that the deceased, after he entered the right of way, had a clear view of the approaching train, which assumption is incorrect, in that the evidence shows there were obstructions upon the right of way, and the question therefore became one of fact—resolved against the company in the trial court and Court of Civil Appeals. That the whistle was not blown nor the bell rung for the crossing was testified to by the en-

gineer; the railroad lay through a heavy skirt of timber which extends to within one hundred yards of the crossing; the road along which the deceased was traveling toward the crossing was up grade on a fill or dump twelve or fifteen feet in width, extending across the bar ditch and up to the track. As the road entered the west gate, where the deceased came in, there was a depression beginning some 8 or 10 feet outside of the right of way fence and extending some four or five feet inside of it. From that point there was a gradual rise of the road toward the track. The train was making about 48 miles an hour. The burden of proof was upon the railway company to establish the negligence, if any, of the deceased, and it was for the jury to say whether that burden was satisfied under the facts of the case. Salter v. G., H. & S. A. Ry. Co. (Tex. Civ. App.) 285 S. W. 1112.

Plaintiff in error's next assignment in its application for writ of error complains that the jury's finding that it failed to exercise ordinary care, after the fireman or engineer actually discovered the peril of the deceased, cannot be upheld, the jury having also found that the engineer and fireman were negligent in failing to keep a proper lookout for the purpose of discovering deceased; the fifth assignment and proposition thereunder is to the effect that the jury's finding that the engineer and fireman were negligent in failing to keep a lookout for the purpose of discovering the deceased eliminated the issue of discovered peril; the sixth assignment is based upon the proposition that negligence cannot be predicated upon failure to blow the whistle or ring the bill, if the deceased, after he entered upon the right of way, stopped, looked, and listened for the approaching train—this is followed by the statement (which, as we have shown above, is erroneous) that the undisputed evidence shows that, if he did stop, look, and listen, "he was compelled to see the approaching train before he entered upon the track."

■ The findings of the jury in answer to special issues Nos. 9, 10, and 11, that the train operatives were negligent in failing to keep a proper lookout for the deceased or other persons on or about to go upon the crossing, and in answer to special issues Nos. 12, 13, and 14, that such operatives were guilty of negligence proximately causing the death of the deceased after they actually discovered him and realized his danger, are not inconsistent, as a matter of law. St. L. B. & M. Co. v. Cole (Tex. Com. App.) 14 S.W.(2d) 1024; N. T. T. Co. v. Weed (Tex. Com. App.) 300 S. W. 41.

■■ While the issue of discovered peril cannot be predicated upon the failure of the engineer to discover the deceased (Crews v. Schaff [Tex. Civ. App.] 250 S. W. 749), the evidence shows that the engineer did discover the deceased before the latter had reached the track, and it was an issue of fact whether the deceased had ample time to stop and avoid the injury had he been warned of the train's approach by sounding the whistle or ringing the bell. The trial court's charge on this subject properly instructed the jury as follows: "In connection with the explanatory of special issue No. 12 submitted to you by the Court, you are instructed: That before you can find for the plaintiffs upon the issue of discovered peril submitted to you by the Court. you must find from a preponderance of the evidence that the engineer operating the engine actually discovered the peril of the deceased J. S. Sherman, at such a distance from the track that he could with all the means at his command, by the exercise of ordinary care, have prevented the accident; and in connection therewith, you are further instructed that you cannot find for the plaintiffs upon the issue of discovered peril upon the ground that the engineer, in the exercise of ordinary care, could have discovered the deceased in time to have prevented the accident, or that he was negligent in not discovering the deceased sooner than he actually did discover him, as the duties of the operators of the engine do not arise until the peril of the deceased is actually discovered."

As said by the Court of Civil Appeals: "Several witnesses who were near the scene, but who could not see what happened, testified that they heard the crash of the collision before the whistle was sounded. * * * The engineer said that he was about a pole and a half length from deceased when he first saw him. A pole length is 176 feet. That would have made about 264 feet between the engine and deceased. The deceased was about halfway across the right of way and traveling about 5 or 6 miles an hour. He was at least 20 or 25 feet from the track. It was in evidence that a car running 5 or 6 miles an hour could be stopped in about 2 or 3 feet. Blowing the whistle was the last thing the engineer did in his effort to avoid striking deceased. His efforts were directed to slowing up or stopping the train. If he had instantly sounded the whistle when he first saw deceased, it is very likely that it would have arrested the attention of deceased and he could have easily stopped his car before reaching the track. To be sure, the engineer did what he conceived to be proper in the emergency. However, as was said in Trochta v. Railway (Tex. Com. App.) 218 S. W. 1039, the test of liability is not whether the engineer, after discovering the peril of deceased, acted in good faith in an effort to avoid the injury, but whether he acted as a man of ordinary prudence would have acted under the circumstances. This was a question to be determined by the jury from all the evidence. Missouri, K. & T. R. Co. v. Reynolds, 103 Tex. 31, 122 S. W. 531. * * * Under the

circumstances of the instant case, we think an ordinarily prudent person would have realized the futility of attempting to stop the train before reaching the crossing and would have instantly sounded the whistle to alarm deceased and cause him to stop and thus have avoided the accident. The jury passed upon the question and found against appellant. We think the finding has support in the record."

■■ Plaintiff in error's seventh assignment of error goes to the action of the trial court in permitting the witness Jarvey to testify to an experiment made by him in July, after the accident happened in March, to ascertain how far a train approaching the crossing where the accident occurred could be seen, and in permitting the witness Graham Hightower to testify to a similar experiment made by him in connection with said witness. Jarvey on the Sunday before the case was first tried in July.

It is permissible to prove the existence or nonexistence of a fact by experiments made for that purpose, under circumstances substantially the same as those existing at the time of the occurrence or nonoccurrence of the alleged fact. G., C. & S. E. Ry. Co. v. Whitfield (Tex. Civ. App.) 206 S. W. 380; G., H. & N. Ry. v. Olds (Tex. Civ. App.) 112 S. W. 787; H. & T. C. Ry. Co. v. Ramsey, 43 Tex. Civ. App. 603, 97 S. W. 1067.

There was testimony that, when these experiments were made, the conditions surrounding the scene of the accident were the same as at the time of the accident, except that the weeds, grass, and bushes on the right of way north of the crossing had been cleared away; the railway company had itself placed in evidence A. R. Hightower's testimony of an experiment made by him about four weeks before the trial, also pictures, plats, and drawings of the situation on the ground made in August, 1927. It was not error for the trial court to permit plaintiffs to make proof of observations made when the defendant itself offered similar testimony.

■ Plaintiff in error's eighth assignment of error complains of the overruling by the Court of Civil Appeals of its eighth proposition as follows: "Where a witness is available to both parties to litigation no presumption whatever is to be drawn from the failure of the defendant to call witnesses," based upon its fifty-fifth assignment of error in that court, the pertinent portion of which is as follows, as pointed out in plaintiff in error's brief here and in the Court of Civil Appeals: "The court erred in instructing the jury over the objections of the defendant that the fireman would have testified to facts detrimental to the defendant and for that reason he was not placed on the stand."

The record reveals that no such charge was given by the trial court, and therefore there is nothing on which to found the assignment or proposition.

An inspection of the transcript, however, discloses such fifty-fifth assignment to be as follows: "The court erred in permitting plaintiff's counsel, over the objections of the defendant, to state to the jury that the fireman would have testified to facts detrimental to the defendant and for that reason he was not placed on the stand," and this seems to be the basis for the next assignment (numbered 10 in the application for writ of error). The bill of exceptions, as qualified by the trial judge, shows that Hamilton, the engineer, a witness for the company, had testified that Mullins, the fireman, was in attendance on the court; Mullins was not subpoenaed as a witness in the case, was not sworn and placed under the rule, nor did the company, at any time, tender him to the plaintiffs as a witness. The bill of exceptions further show that plaintiffs' counsel in his argument stated to the jury that the defendant did not put the fireman on the stand, for the reason that the fireman would have testified, or the jury had a right to presume that he would have testified, adversely to the defendant with reference to the ringing of the bell—a statement quite different from that contained in the assignment, which is overruled.

As said in M. P. Ry. Co. v. White, 80 Tex. 207, 15 S. W. 808, 811, "attorneys may comment upon the absence of witnesses or their nonproduction, when they are shown to be cognizant of the facts in issue." To the same effect, see 38 Cyc. p. 1490.

■ The next assignment, based on bill of exceptions No. 6, complains of the court's permitting the witness Jarvey to testify that, by reason of the condition of the road, its narrowness, and the weeds having grown on the sides, and the ruts on the sides of the road, a person, in driving from the gate to the crossing, would have to exercise a very high degree of care or would have to drive very cautiously—this evidence was admitted, as shown by the bill of exceptions, as bearing upon the issue of the deceased's contributory negligence, if any. The objection was that it was but an opinion and conclusion of the witness, invaded the province of the jury, and was prejudicial to the rights of the defendant.

The statement of facts shows that the witness was asked this question: "In the condition of the approaches and that roadway, at the time you first saw it, to what extent would a man driving a Ford truck in the gate and upon the track have to watch his business of driving?" The answer was: "He would have to be very cautious."

The witness, before and after making such answer, fully described the condition of the roadway, track, fences, brush, grass, and ob-

246

structions alleged to have been along the right of way and crossing. Another witness, Graham Hightower, testified, apparently without objection, that a man, driving across, would have to use all his skill to get across there at that particular time he was there making observations with the witness Jarvey.

No reversible error is shown by said assignment, nor under the next assignment complaining of Mrs. Sherman's testimony of the deceased's earning capacity being based on what the deceased told her. The statement of facts shows that she testified of her own knowledge; and Mrs. R. S. Stebbins, a daughter of deceased (whose testimony is also complained of, as being hearsay), testified that she had occasion to see the checks that her father received for the timber that he sold, that she kept records thereof until he was killed; that her father had from two to three men working for him on an average, and paid them on the figures made by the witness.

The bill of exceptions shows that:

"The witness, Mrs. Sherman, testified, without objection, 'I know what Mr. Sherman was earning on an average per month. He was averaging $300 and from four up.' She also testified, without objection, that he made money from other sources than for timber work, such as trading; that he kept stock, hogs, horses and cattle, and cultivated a truck patch of four or five acres.

"The daughter's testimony to the effect that deceased made $300 and up to $400 in February was elicited by defendant on cross examination. She had previously testified that she had occasion to see the checks he got from week to week in payment for the timber that was sold; that she knew of her own knowledge the amounts of money, checks, etc., he got for the timber, and that she knew what her father paid the laborers who worked for him because she would figure it out for him and he would pay them on her figures."

Whether or not the road crossing the railroad track is a public road was properly submitted as a question of fact to the jury; the jury in answer to the first special issue found that the road in question was a public road at the time of the accident, and, in answer to the second special issue, found that the crossing where the accident occurred was being used by the public with the knowledge and consent of the railway company prior to and at the time of the accident.

The fifteenth assignment of error complains of certain portions of the argument of plaintiffs' counsel in addressing the jury. An examination of the bills of exception on which this assignment is based shows no reversible error upon that point. For instance, bill of exceptions No. 11 contains the following qualification: "The court's recollection of the argument complained of is that plaintiffs' counsel in discussing the issues submitted to the jury, relating to the contributory negligence of the deceased, argued that if deceased before entering upon the right of way satisfied himself that no train was approaching, it would not be negligence for him to drive upon the crossing without looking or listening after he entered the right of way. Plaintiffs' counsel also argued in that connection that defendant's failure to sound the whistle and ring the bell was the proximate cause of the accident, but plaintiffs' counsel did not argue the statutory duty of the defendant to blow the whistle and ring the bell."

Bill of exceptions No. 16 discloses that plaintiffs' counsel in his closing argument stated to the jury that there were roads laid out by the county which were recognized as first, second, and third class roads, but this is qualified by the trial judge as follows: "Previous to the argument complained of, Mr. Garrison, attorney for the defendant, in arguing the issue submitted to the jury as to public character of the road had urged the proposition before the jury that the fact that there were gates across the road indicated it was not a public road and had said to the jury in substance, Don't you know if you went down here and put a gate across this public highway that you would be put in jail. The argument complained of in the foregoing bill was made by plaintiffs' counsel in answer to the argument of defendant's counsel, Mr. Garrison."

It thus appears that the argument was in reply to that of the defendant's counsel, and states correctly the statutory law of this state respecting roads, and was in no way prejudicial to the defendant. The other portion of the argument complained of, in our opinion, was warranted by the evidence and conclusions that might be reasonably drawn therefrom. The length of this opinion precludes further detailed discussion thereof; suffice it to say that the Court of Civil Appeals correctly disposed of the subject.

The sixteenth assignment complains of the closing argument of plaintiffs' counsel, in that the jury was instructed the effect of their findings upon the special issues submitted, by being told to answer questions 1 to 14 in the affirmative and all subsequent questions in the negative.

The bill of exception pertinent to the assignment recites that the argument by plaintiffs' counsel complained of was as follows: "Now, Mrs. Sherman, the court told you that you are not entitled to anything for the loss of companionship, grief or bereavement, but he said you are entitled to damages for his loss in helping you and in advising you, in rearing these children. Who is going to help you raise them from here on out? Who is it

going to fall upon from here on out to do everything? At the wee hours of the night, when the snow might be on the ground, oh, Mr. Sherman, you are not here to go after the doctor—you are not here to help her administer to this little sick fellow. Mrs. Sherman, that will fall on you—all that will fall on you from here on out. All I am asking you is just to take this court's charge and then after figuring all these things up, when you do you are going to see this woman, under the undisputed evidence in this case, figuring it at the least is entitled to every cent we have sued for. You must remember money is not worth as much as it was back several years ago. Yes, $50,000.00—pay the expenses of all those children, keep them in school. Judge Garrison says we are going to argue * * * (statement here inaudible to reporter). You can't do that because Sherman hasn't given them the best education heretofore. He had just come into that community; he hadn't been there but two years. His older children, unfortunately he wasn't so situated, he wasn't able to give them an education that he would like to have given them, just like many other fellows. We don't know what he would have done for the other little fellow. Two of them are in school now. I beg of you gentlemen to help her (meaning the plaintiff) to keep them (meaning the children) in school, and beg of you gentlemen to answer the first fourteen issues 'Yes' and 'Yes' and on down to the—until you get to number 15, in behalf of Mrs. Sherman and those seven children, and I want to beg of this jury to answer question No. 15 'No,' No. 16 'No,' No. 18 'No,' No. 19 'No,' No. 20 'No,' No. 21 'No,' No. 22 'No,' No. 23 'No.' Gentlemen, I thank you."

The jury answered "Yes" to Questions 1 to 14, and "No" to the remaining questions, notwithstanding they were charged by the court not to answer certain questions if preceding ones were answered in the affirmative. For instance, special issue No. 15 submitted the question whether or not the deceased failed to stop his truck after he entered upon the right of way of the defendant company. The jury answered "No." The court instructed the jury that, if they answered "Yes" to the above question, then they should answer special issues No. 16 and 17. Nevertheless, the jury answered special issues Nos. 16 and 17 that the deceased was not negligent in failing to stop his automobile for the purpose of looking and listening, and that such negligence was not the proximate cause.

In answer to special issues No. 18 and No. 21, the jury answered "No," thus finding that the deceased did not fail to look for an approaching train, after entering upon the right of way and within a reasonable distance of the crossing, and did not fail to listen for the approaching train after he had passed through the gate and entered upon the right of way. The court instructed the jury to answer special issues No. 19, No. 20, No. 22, and No. 23 only in the event they answered "Yes" to issues Nos. 18 and 21; nevertheless the jury did answer said issues "No," the effect of which was that the deceased was not negligent in failing to stop his truck for the purpose of looking and listening for the train, and that such negligence on the part of the deceased in failing to stop his truck for the purpose of looking and listening for the train was not negligence. Under the court's charge the jury was directed not to answer questions 16, 17, 19, 20, 22, and 23 if they answered questions 15, 18, and 21 in the affirmative.

There is no escape from the proposition that the jury was guided, in this respect, not by the court's charge, but by counsel's argument, with the idea in mind that the effect of their findings upon the special issues submitted would be a resultant judgment for the plaintiffs.

The Court of Civil Appeals held that the issues were clear and simple, and such that any juror of average intelligence must have known the effect of his answer thereto, and therefore argument such as here complained of is not harmful, and, if error, is harmless.

This contention is disposed of adversely to the holding of the Court of Civil Appeals, by Judge Critz, in T. & P. Ry. v. Edwards (Tex. Com. App.) 36 S.W.(2d) 477, approved by the Supreme Court, upon almost a similar state of facts, involving practically the same issues. The same learned judge in McFaddin v. Hebert, 118 Tex. 314, 15 S.W.(2d) 213, 217, approved by the Supreme Court, said: "We therefore conclude that, since it is undoubtedly error for the jury to first agree on the result they wish to accomplish by their answers, and then designedly frame said answers so as to accomplish such result. It is reversible error for an attorney to make an argument to the jury which is calculated to cause them to do the very thing that the law prohibits. In the case at bar we are convinced that the argument set forth in the certificate of the Court of Civil Appeals, though made in good faith, was calculated to cause the jury to disregard their obligation as jurors to answer each question separately, truly, and distinctly, and amounted in law to an appeal to the jury to designedly agree on a result and so form their answers as to accomplish such result."

And Judge Sharp, in Fidelity Union Casualty Co. v. Cary (Tex. Com. App.) 25 S.W. (2d) 302, approved by the Supreme Court, held reversible error the following argument: "Answer these questions as I have told you to answer them down to No. 6 and you will not have to answer the rest. When you have answered to the first question that, yes, Mose Cary did sustain an injury, and when you

248

have answered to the second question, yes, such injury has permanently and totally disabled him, and you have answered the next two questions as to average wages as I have told you to answer them, and when you have answered #5 yes, that a manifest hardship and injustice would result to Mose Cary to deny him a lump sum payment of any compensation that might be due him, Judge Boyd will take your verdict and upon it render a judgment for Mose Cary and against Fidelity Union Casualty Company for 400 installments of compensation in a lump sum."

In the instant case the jury were told to answer the questions in a certain way in order to help the plaintiff and keep her children in school; the plain inference being that, unless the questions were so answered, she would not be helped and her children would not be kept in school. We have reached the conclusion that such argument constitutes reversible error; other errors assigned and not specially disposed of here may not occur on another trial, and we pretermit discussion of them.

We recommend that the judgments of the District Court and Court of Civil Appeals be reversed and the cause remanded for trial.

CURETON, C. J.

Judgments of the district court and Court of Civil Appeals are both reversed, and the cause remanded, as recommended by the Commission of Appeals.

We approve the holdings of the Commission of Appeals on the questions discussed in its opinion.