F. M. C. CORPORATION, Appellant,

v.

Winfred BURNS and Hugh Rouw,
Appellee.

No. 14758.

Court of Civil Appeals of Texas.

San Antonio.

June 25, 1969.

Rehearing Denied Sept. 10, 1969.

Franklin D. Houser, House, Mercer, House & Brock, San Antonio, for appellant.

Mann, Castillon, Freed & Kazen, Nat B. King, Laredo, Urban Farrow, Carrizo Springs, for appellee.

KLINGEMAN, Justice.

This is a products liability case. Hugh Rouw, now deceased, and Winfred Burns, plaintiffs below, sued F.M.C. Corporation, defendant below, for damages allegedly resulting from the use of a wax product manufactured by defendant, in the processing of cucumbers from a farm operated by plaintiffs. Trial was to a jury who found that: defendant furnished to plaintiffs a waxing machine and wax product for use in the processing of cucumbers; the wax product so furnished was not reasonably fit for said use; plaintiffs' cucumbers were damaged as a result of using defendant's wax product; the use of such wax product was a proximate cause of the damages to the cucumbers; plaintiffs were damaged in the amount of $45,000.00. Judgment was rendered for plaintiffs in accordance with the jury verdict.

Defendant produces and manufactures a wax product, sometimes referred to as "Flavorseal," which is used to deposit a light coat of wax to the outside of processed vegetables and fruits. There is testimony that the use of some type of wax product improves the appearance and salability of cucumbers and is necessary in order to get a good market price. In September of 1964, defendant furnished its wax product and a machine which applies the wax product to plaintiffs to wax and process a 90-acre crop of cucumbers located in Dimmit County. The machine and the wax were delivered to the shed where plaintiffs' cucumbers were to be processed by a representative of defendant with the wax product which was contained in barrels furnished by defendant. At that time the waxing machine was set up for operation by defendant's representative. Defendant was paid a down payment of $200.00 by plaintiffs in connection with such transaction and was to be paid an agreed amount for each carton or bushel of cucumbers processed with such wax product. There is evidence that plaintiffs' crop of cucumbers was an excellent one, and that such crop would average at least $1,000.00 an acre. Plaintiffs started harvesting the crop of cucumbers between October 15, 1964, and October 18, and a representative of

defendant was present when the first batch of such cucumbers was processed with defendant's wax and waxing machine. The first load of cucumbers processed, as well as four other loads thereafter processed with defendant's product, was sent out of state by truck and all of the cucumbers were refused at the point of destination by the purchaser. There is evidence that some of such cucumbers had sunken areas, including portions which were soft, translucent and leaky. Plaintiffs stopped using defendant's wax around November 6 or 7, 1964, at which time approximately 70% of the cucumbers had been picked and the remaining 30% were processed with another wax product and another machine, and none of these cucumbers were refused. There was evidence that cucumbers have to be picked at the right time, and a large number of cucumbers had to be picked and discarded during the time plaintiffs were using defendant's wax product and attempting to find out why their cucumbers were being rejected.

Most of the early cases involving products liability base liability on a so-called warranty theory, and as an obligation growing out of a contract. However, in the last few years there has evolved a recognition that the liability here imposed is a form of strict liability in tort. Keeton, Products Liability, Current Developments, 40 Tex. Law Review, 193; Keeton, Products Liability, Liability Without Fault, 41 Tex. Law Review, 855; Wade, Strict Tort Liability, 19 S.W. Law Journal 5. The rule imposing liability on sellers of products has been gradualistic and marked with caution in Texas. The early cases imposing such liability dealt with manufacturers

of food products for human consumption. Decker & Sons, Inc. v. Capps, 139 Tex. 609, 164 S.W.2d 828, 142 A.L.R. 1479. However in 1967 the Supreme Court in McKisson v. Sales Affiliates, Inc., 416 S.W.2d 787, committed the Court to the rule of strict liability expressed in Sec. 402A of American Law Institute's Restatement of the Law of Torts, 2d Ed.[1] as applicable to all persons engaged in the business of selling who sell a product in a defective condition which renders it unreasonably dangerous to a user or consumer or to his property. Thereafter the Supreme Court in O. M. Franklin Serum Co. v. C. A. Hoover & Son, 418 S.W.2d 482, approved a holding of a Court of Civil Appeals, 410 S.W.2d 272 that a seller of a defective product is subject to strict liability for damages caused to the property of the ultimate consumer.

Defendant presents 124 points of error on this appeal. No attempt will be made in this opinion to discuss all of such points of error individually but they will be grouped as to their general area of complaints.

## POINTS OF ERROR IN REGARD TO SPECIAL ISSUES SUBMITTED BY THE COURT

■ Defendant by over forty points of error complains of Special Issues Nos. 2, 3 and 4, where inquiry was made as to whether the wax product furnished by defendant was not reasonably fit for use on plaintiffs' cucumbers, whether plaintiffs' cucumbers were damaged as a result of using defendant's wax product in the processing of their cucumbers, and whether use of

1. "(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if (a) the seller is engaged in the business of selling such a product, and (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
"(2) The rule stated in Subsection (1) applies although (a) the seller has exercised all possible care in the preparation and sale of his product, and (b) the user or consumer has not brought the product from or entered into any contractual relation with the seller."

such wax product was a proximate cause of damages sustained by plaintiffs.[2] Defendant asserts that there is no evidence and insufficient evidence to support the submission of such issues, the jury's answers thereto are supported by no evidence and are against the great weight and preponderance of the evidence, that such issues will not support a judgment for plaintiffs, that they are not ultimate issues, that some of the issues constitute a double submission of two separate involved theories, and that such issues are global issues or general issues.

Defendant's main complaints are based on its contention that no defect has been shown in defendant's product and that it is undisputed that the product was not used as intended, and that there was an improper application of such product.

There is ample evidence that the wax product furnished by defendant to plaintiffs was in a defective condition at the time it was delivered to plaintiffs. Defendant's chemist testified that his wax product in its proper formulation consisted of 7% wax and 93% volatile hydrocarbons; that in its true solution it has no color whatsoever and is water clear. There is testimony by plaintiffs' witnesses that the wax product sold and delivered to them and used by them on plaintiffs' cucumbers had an amber color. A sample of such wax product used by plaintiffs was introduced into evidence as Plaintiffs' Exhibit No. 3, which was amber colored and there is testimony that a jar of such wax product was sent to a chemist for Texas Testing Laboratories in November of 1964, within a very short period of time after plaintiffs' cucumbers had been processed with such wax product. The chemist testified that a qualitative and quantitative analysis of such wax product was made by him at such time and that it showed that such wax product contained 10% wax and 90% hydrocarbons, and that the color and odor of the wax product sent to him in November, 1964, was similiar to Plaintiffs' Exhibit No. 3. Defendant's chemist stated that the liquid which was introduced as Plain-

2. "SPECIAL ISSUE NO. 2:
Do you find from a preponderance of the evidence that the wax product so furnished by defendant, F.M.C. Corporation, was not reasonably fit for use on plaintiffs' cucumbers?
Answer: It was not reasonably fit for said use, or
It was reasonably fit for said use.
We, the Jury, answer it was not reasonably fit for said use.
"SPECIAL ISSUE NO. 3:
Do you find from a preponderance of the evidence that the Plaintiffs' cucumbers were damaged as a result of using the Defendant's wax product in the processing of their cucumbers?
Answer: Plaintiffs' cucumbers were damaged, or
Plaintiffs' cucumbers were not damaged.
We, the Jury, answer Plaintiffs' cucumbers were damaged.
"SPECIAL ISSUE NO. 4:
Do you find from a preponderance of the evidence that the use of Defendant's wax product by Plaintiffs was a proximate cause of damages sustained by Plaintiffs, if any, to their cucumber crop?

Answer: It was a proximate cause, or
It was not a proximate cause.
We, the Jury, answer it was a proximate cause.
By the term 'proximate cause', as used herein, is meant an act or omission which, in a natural and continuous sequence of events, unbroken by any new and intervening cause, produces an event, and without which the event would not have occurred; and in order to constitute proximate cause of an event, as that term is used herein the act or omission complained of must be such that the particular injury or damage complained of, or some similar injury or damage, which might probably result therefrom, would, in the exercise of ordinary care, have been reasonably foreseen by a person of ordinary care and prudence in the light of attending circumstances. It must be a concurring cause which contributed to the production of the result in question and but for which said result would not have occurred. There may be more than one proximate cause of an event, but there may be only one sole proximate cause of an event."

tiffs' Exhibit No. 3, and shown him, was not like defendant's wax product should be in its proper form, and that if the wax product delivered to plaintiffs in 1964 resembled Plaintiffs' Exhibit No. 3 it could be an improper mixture. Defendant's chemist testified that an excess of wax deposited on cucumbers could cause damage to them.

There is also ample evidence that plaintiffs' cucumbers were damaged after being processed with defendant's wax product. It is defendant's contention that if any damage was caused to plaintiffs' cucumbers by its wax products it was through improper application, not because of any defect in the wax. Defendant's chemist testified that its wax product was made up of volatile hydrocarbons and wax which remains in solution when mixed together, and that when properly applied through defendant's machine the hydrocarbons flash out and evaporate when sprayed leaving the residual wax molecules to be deposited on the cucumbers being waxed; that the machine used must have a proper sized orifice or nozzle, and that an over-application of the wax product could cause damage to the cucumbers, both through an excess of wax deposited on the cucumbers and by the deposit of some of the hydrocarbons on the cucumbers.

There is evidence that at one time in the processing of plaintiffs' cucumbers, plaintiffs' employee bored out the nozzles to a certain extent. Plaintiffs' employee testified that in doing so he used a drill about the size of a pin. There is further testimony that when defendant's representative requested to see what was causing damage to the cucumbers, at the time he arrived, on or about October 25th or 26th, the nozzles had been bored out to some extent and the pressure on the machine was higher than it should have been. However, there is also evidence that a portion of the cucumbers which were damaged and were refused, were processed with the nozzles exactly as set up by defendant's representative, and that defendant's representative was present when the first bunch of cucumbers was processed, which cucumbers were among those refused. Such representative also testified that on the occasion of such visit, on October 25th or 26th, he removed the bored out nozzles and substituted proper nozzles and properly adjusted the machine as to pressure and other respects, and that when he came to pick up the machine after plaintiffs stopped using it, it had the proper nozzles on it. There is testimony that the same type of damage occurred to the cucumbers both before and after the alteration of the nozzles, and also after the new nozzles had been substituted, and that cucumbers were being refused during all this period of time. Plaintiffs' foreman testified that as the cucumbers were processed, in addition to those shipped, other cucumbers were sprayed with defendant's wax in defendant's machine and set aside in plaintiffs' shed, and that in a day or two they began to deteriorate and decay; they had soft spots and sunken areas, and this occurred both before and after the nozzles had been bored out. He further testified that the cucumbers that were kept in the shed after they were waxed with defendant's wax and waxing machine were badly damaged, and the cucumbers that were kept in the shed which were not waxed were not damaged.

Plaintiffs' chemist testified, over objections, that he also performed some tests with the wax delivered to him to see how it affected cucumbers, and that to perform such test he bought some cucumbers and dipped them quickly in some of defendant's wax product, took them out to drain and put them in a container to observe them; that in about twenty-four hours they began to blister and get soft; they had sunken areas in them and a white substance was secreted from some of the cucumbers and mold formed on portions of them; that after twenty-four hours deterioration continued very rapidly, and the cucumbers acted as if they had been frozen and had

characteristics of freezing, although the cucumbers had not been in a refrigerator or exposed to cold weather. These same type of damages were found on some of the shipped cucumbers which were rejected at destination.

There was also testimony that after plaintiffs quit using defendant's wax and waxing machine to process their cucumbers, they began to use another wax product and another machine, and these cucumbers, processed with the other wax product, were not damaged and none were refused when sold. See O. M. Franklin Serum Company v. C. A. Hoover & Son, 410 S.W.2d 272 (Tex.Civ.App.—Amarillo 1967, writ ref'd n. r. e.), 418 S.W.2d 482 (Tex.Sup.1967).

Although there was extensive testimony from defendant's witnesses that cucumbers or other food products could be damaged from improper application of its wax product, it is undisputed that no specific direction as to the application thereof was given by defendant to plaintiffs, no warning was given to plaintiffs that the cucumbers could be damaged by improper application, no literature in connection with such product was distributed to plaintiffs, and the wax product itself had no warning or direction with regard to its use.

Special Issues Nos. 2, 3 and 4 appear to be substantially similar to the special issues submitted in McKisson v. Sales Affiliates, Inc., 416 S.W.2d 787 (Tex.Sup.1967), involving damages from the use of a permanent wave preparation. The case before us is distinguishable from Pittsburg Coca-Cola Bottling Works v. Ponder, Tex., 443 S.W. 2d 546 (1969), both by its facts and the form of special issues submitted. The special issues herein complained of properly presented to the jury the ultimate issues in the case, and the jury's answers to such special issues are sufficiently supported by the evidence. We find no reversible error presented in defendant's many points of error complaining of Special Issues Nos. 2, 3 and 4.

■ Defendant, by seventeen points of error, complains of Special Issue No. 5.[3] Defendant asserts there is no evidence to support the jury's answer to such issue, there is insufficient evidence; that the jury's answer thereto is against the great weight and preponderance of the evidence; that the instruction with such special issue was erroneous in many respects; that in the state of the question and instruction it is impossible to tell what the jury meant by their answer to that issue; and that defendant did not get an independent submission of its defense of "improper use." One of defendant's requested special issues (Special Issue No. 14)[4] inquired as to whether defendant's wax product was improperly applied to plaintiffs' cucumbers and is worded exactly the same as the submitted Special Issue No. 5. Defendant's objections therefore are directed primarily to the accompanying instruction to the effect that in determining whether or not the product was improperly applied the jury should take in consideration whether or not defendant provided plaintiffs with proper instructions or directions for the operation of the machine. It is to be noted that one of defendant's primary contentions, both in the trial court and in this Court, is that the real issue in the case is

3. "SPECIAL ISSUE NO. 5:
   Do you find from a preponderance of the evidence that the F.M.C. wax product in question was improperly applied to Plaintiffs' cucumbers?
   In determining whether or not the wax product was improperly applied, you should take into consideration whether or not the Defendants provided Plaintiffs with proper instructions or directions for the operation of the machine and the proper use of the wax product.

   Answer: It was improperly applied, or
   It was not improperly applied.
   We, the Jury, answer It was not improperly applied."

4. DEFENDANT'S SPECIAL REQUESTED ISSUE NO. 14
   "Do you find from a preponderance of the evidence that the FMC wax product in question was improperly applied to plaintiffs' cucumbers?"

the application of the product and not its formulation. It is also to be remembered that no specific instructions were given to plaintiffs with regard to the operation of the machine or use of the wax product— defendant's representative set up the machine ready for use and plaintiffs were told the only thing they had to do was push a button to turn on the machine. It is to be further remembered that no warning of any kind was given in connection with the use of such machine or wax product. Although defendant has contended, both in the trial court and in this Court, that the wax product could be harmful to cucumbers or other products if used in excess and not properly applied, no warning was ever given plaintiffs of this danger, and no instructions were ever given as to the use of said machine or product. In Sec. 402A, Restatement of the Law of Torts, 2d ed., Subd. h, it is stated that where a seller can reasonably anticipate a danger may result from a particular use, as where a drug is sold which is safe only in limited doses, he may be required to give an adequate warning and a product sold without such warning is in a defective condition. In McKisson v. Sales Affiliates, Inc., 416 S.W.2d 787, 792 (Tex.Sup.1967), it is stated: "The jury also found that the defendant failed to provide adequate directions for the use of the preparation. While this issue may form the basis of liability founded upon negligence, it also has a bearing upon whether or not Mrs. McKisson made a proper use of the lotion." This Court in Starr v. Koppers Company, 398 S.W.2d 827 (1965, writ ref'd n. r. e.), said: "Today the general rule is that one who manufactures or supplies a product has a duty of reasonable care to users, and to those in the forseeable zone of danger of such use, to prevent physical harm that he should reasonably foresee could result

from the use of the product for its intended purpose. The obligation of such manufacturer or supplier is to exercise reasonable care to discover the dangerous propensities of the product and to warn those whom he should expect to use it. Restatement, Torts 2d, § 392 (1965)."

Under the record we find no error of the court in its submission of Special Issue No. 5, together with the accompanying instruction.

■ Defendant by five points of error complains that the trial court erred in submitting Special Issue No. 6[5] on the grounds that it was improperly conditioned upon Special Issue No. 5, and as conditioned was a comment on the weight of the evidence. It also asserts that the jury's answer to Special Issue No. 6 is against the great weight and overwhelming preponderance of evidence. In actuality, the jury did not answer Special Issue No. 6, which was to be answered only if the jury answered Special Issue No. 5 to the effect that "it was improperly applied."

We find no merit in defendant's points of error pertaining to Special Issue No. 6 and all are overruled.

ERROR OF THE COURT IN REFUSING TO SUBMIT DEFENDANT'S REQUESTED SPECIAL ISSUES

Defendant requested the submission of some forty special issues, and by a number of points of error complains of the trial court's refusal to submit most of such issues. Many of these issues were shades or phases of the special issues submitted by the court, some are duplicitous, and some are issues on contributory negligence which is not properly a defense in a strict liability case. In our opinion, the special issues

---

5. "If you have answered special issue no. 5 'It was improperly applied', and in that event only, you will answer Special Issue No. 6.

"SPECIAL ISSUE NO. 6:
Do you find from the preponderance of the evidence that the improper application of the FMC product in question proximately caused Plaintiffs' damages?

Answer 'yes' or 'no'.

We, the Jury, answer _____."

submitted by the court properly presented to the jury the ultimate issues in the case, and the trial court did not commit reversible error in denying the many special issues requested by defendant of which it complains.

## POINTS OF ERROR AS TO ADMISSION OF EVIDENCE

■■■ Defendant complains that the court erred in allowing a chemist to testify as to results of certain tests made by him using some of defendant's wax product on cucumbers. Mr. Schmid, a chemist for Texas Testing Laboratories, testified that he was furnished a jar of defendant's wax product in November, 1964, by plaintiffs, which was within a short period of time after plaintiffs had processed some of their cucumbers with defendant's wax product, and that in addition to a qualitative and quantitative analysis of such product made by him, he bought some cucumbers and dipped them quickly in defendant's wax product, allowed them to drain and set them aside for observation, and that within 24 hours he observed signs of deterioration in the cucumbers so waxed, that such cucumbers began to blister, became soft and mushy, pits and sunken areas appeared on them, and they showed other evidence of decay. It is defendant's contention that such wax product was designed to be used and was used by plaintiffs in one of defendant's spraying machines, and that to admit testimony as to the effect of dipping cucumbers in such wax product was reversible error.

Both plaintiffs and defendant rely on the holding in Fort Worth & Denver Railway Company v. Williams, 375 S.W.2d 279 (Tex. Sup.1964), wherein the Court stated:

"In order to render evidence of an experiment made out of court and without the presence of the opposing party admissible, it is generally held that there must be a substantial similarity between conditions existing at the time of the occurrence which gives rise to the litigation and those in existence at the time the experiment is conducted for demonstration purposes. It is not, however, essential that the conditions of the occurrence and the experiment be identical. Houston, East & West Texas Ry. Co. v. Sherman, Tex.Com.App., holdings approved by the Supreme Court, 42 S.W. 2d 241 (1931); Rodgers v. State, 93 Tex.Cr.R. 1, 245 S.W. 697 (1922). When there exists a dissimilarity, testimony of an experiment should be excluded when the result thereof would probably confuse rather than aid the jury. There exists an area wherein the determination of the admissibility of proffered experiment testimony rests within the discretion of the trial judge. This occurs whenever the dissimilarity between the occurrence conditions and the circumstances of the experiment is minor or can be made abundantly clear by explanation. Houston, East & West Texas Ry. Co. v. Sherman, supra. Panhandle and Santa Fe Ry. Co. v. Haywood, Tex.Civ.App., 227 S.W. 347, wr. ref. (1921). See, Annotation, Experimental evidence as affected by similarity or dissimilarity of conditions, 85 A.L.R. 479."

Defendant's attorney on cross-examination thoroughly questioned such chemist with regard to the alleged differences between the defendant's spraying process and the testing process used by such chemist, and when questioned as to whether such tests were substantially similar, he testified that he didn't think the difference in the two methods would be so critical that it should cause cucumbers to spoil if one was dipped and one was sprayed, and that he didn't think the end result would be too much different. Very few tests are made under the exact conditions present when a prior event occurred, and the law requires only that substantially the same conditions must exist. The trial court is allowed considerable latitude in determining whether conditions are sufficiently similar to permit testimony about the tests. McAllister v. Magnolia Petroleum Company, 319 S.W. 2d 411 (Tex.Civ.App.—Dallas 1958, writ ref'd n. r. e.)

In view of the expert's testimony of the substantial similarity of the experiment and the fact that any dissimilarity was fully explained to the jury, we find no reversible error in the trial court's submission of such testimony.

██ Defendant also complains that the trial court erred in admitting into evidence as an exhibit a container of the wax product which plaintiffs used after they discontinued using defendant's wax product. It is defendant's contention that the two wax products are entirely different in chemistry, design, method of application and results, and that the evidence introduced was not relevant to any issue at hand. It is plaintiffs' contention that since there was evidence that cucumbers which were processed with defendant's wax product were damaged, as hereinbefore set forth, and that after plaintiffs began to use another wax product no such damage occurred to the cucumbers, it was relevant to introduce into evidence the wax product which was thereafter used as one link in the chain of evidence. While we do not see any great materiality with regard to the introduction in evidence of such wax product, in view of the fact that there was already abundant evidence to the effect that damage occurred while plaintiffs were using defendant's wax product and that no damage occurred after plaintiffs began using the second wax product; and in view of the fact that there was considerable evidence before the jury as to the differences in the type of wax, we find no harm in the court allowing into evidence as an exhibit the wax product subsequently used by plaintiffs.

## JURY MISCONDUCT

Defendant asserts that it is entitled to a new trial because one of the jurors during deliberation of the damage issue recited his personal observations as to his experience with his own cucumber crop and plaintiffs' crop which he had seen. Defendant has no point of error complaining of the damage issue.

██ The jury, in answer to Special Issue No. 7,[6] awarded damages in the amount of $45,000.00. Five of the jurors testified on defendant's motion for new trial on the matter of jury misconduct. The alleged jury misconduct occurred during the jury's deliberation on the damage issue, which was the last issue. During such deliberation one of the jurors, Mr. Villanueva, stated that he had a crop of 45 acres of cucumbers in 1964 in Dimmit County about three miles from plaintiffs' crop; that such cucumber crop netted him $28,000.00, that he had seen plaintiffs' crop and that plaintiffs' cucumbers were better than his. The record discloses that before such statement was ever made there had been considerable discussion by all of the jurors as to the amount of damages, with suggested figures ranging from $27,000.00 to $72,000.00, and that from the start of such deliberations a number of the jurors wanted to award $45,000.00 or in excess thereof.

In order to be entitled to a new trial on the basis of alleged jury misconduct, misconduct must be proved and be material, and it must appear that probable injury resulted to the complaining party. Rule 327, Texas Rules of Civil Procedure; Martinez v. H. E. Butt Grocery Company, 379 S.W.2d 94 (Tex.Civ.App.—San Antonio 1964, no writ); Smith v. Whitehead, 363 S.W.2d 369 (Tex.Civ.App.—Houston 1963, no writ); Jordan v. New Amsterdam Casualty Company, 353 S.W.2d 256 (Tex. Civ.App.—Waco 1962, writ ref'd on other grounds, 359 S.W.2d 864); 41 Tex.Jur.2d, New Trial, § 33. In light of the record as a whole, we find no reversible error on the basis of jury misconduct.

██ Defendant also asserts that the trial judge erred in permitting a relative, namely, his son, to actively participate in the

---

6. "SPECIAL ISSUE NO. 7:
    What amount of money if paid now in cash do you find from a preponderance of the evidence would reasonably and fairly compensate Plaintiffs for the loss, if any, suffered by them as a result of the damage to Plaintiffs' cucumbers on the occasion in question?
    Answer by stating the amount.
    We, the Jury, answer $45,000.00."

trial of the case. In support thereof defendant relies on the provision of Art. 5, § 11, of the Texas Constitution [7] and Art. 15, Vernon's Ann.Civ.St.[8]

The trial judge's son was one of several attorneys representing the plaintiffs, and it was shown in defendant's motion for new trial that such attorneys were representing plaintiffs on a contingent fee contract. It was further shown that the trial judge would not be asked to approve or pass on the contract or set the fee.

Our Supreme Court had this point before it in Dow Chemical Company v. Benton, 163 Tex. 477, 357 S.W.2d 565 (1962), wherein it was stated:

> "Since the case of Winston v. Masterson, 87 Tex. 200, 27 S.W. 768, it has been the law in Texas that an attorney with a contingent fee contract is not so directly interested in the subject matter of a lawsuit as to make him a 'party' within the meaning of the statute disqualifying a judge who is related to a party in a case tried before him. Art. 15, Vernon's Ann.Civ.St. An exception to this rule is in cases where the judge must approve the attorney's fee. Indemnity Ins. Co. of North America v. McGee, Tex., 356 S.W. 2d 666. This exception was defined in Postal Mutual Indemnity Co. v. Ellis, 140 Tex. 570, 169 S.W.2d 482, but the Court there expressly reaffirmed the general rule of the Winston case."

Defendant's point of error as to the disqualification of the trial judge is overruled.

We have considered all of defendant's points of error and all are overruled. The judgment of the trial court is affirmed.

### ON MOTION FOR REHEARING

BARROW, Chief Justice.

I concur in the result.

---

7. "No judge shall sit in any case wherein he may be interested, or where either of the parties may be connected with him, either by affinity or consanguinity, within such a degree as may be prescribed by law, or when he shall have been counsel in the case."

8. "No judge or justice of the peace shall sit in any case wherein he may be interested or where either of the parties may be connected with him by affinity or consanguinity within the third degree, or where he shall have been counsel in the case."